ANNIE LOUISE VAN AKEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76894, 79334.   Promulgated December 4, 1936.

*H. C. Kilpatrick, Esq.*, for the petitioner.

*R. P. Hertzog, Esq.*, and *Conway N. Kitchen, Esq.*, for the respondent.

154

## OPINION.

HILL: The first issue in this case involves the question whether petitioner is taxable upon her distributable share of the net operating income derived in the taxable years from the so-called dower lands. Petitioner contends that the principal agreement of July 16, 1931, entered into between her and the testamentary trustee, did not create a trust, but effected a sale of her life estate in the dower lands for a consideration payable partly in installments, and that since the aggregate amount received in the taxable years did not exceed the basis of the property rights sold, no part of such amount constitutes taxable income to her. Respondent determined and here contends that the agreement referred to created a trust, of which petitioner is the income beneficiary, and that her distributable share of the net operating income is taxable to her as such.

Upon the filing by petitioner of the dissent to decedent's will, she thereby became endowed of a life estate in one-half of the Alabama realty and of one-half of the Maine realty in fee. This included her right to the possession, management and control of her share of all the realty, as well as the income therefrom. Obviously, it was impracticable to divide the realty into two equal parts by metes and bounds, so that petitioner might have her dower interest in kind. Hence, the agreement in question was voluntarily worked out to define and provide for the rights of the respective parties in an equitable and satisfactory manner.

Under the agreement, the testamentary trustee conveyed to petitioner by quitclaim deed the estate's one-half interest in the Maine realty, and executed a license permitting petitioner to occupy the Birmingham residence for life. The value of the interests thereby conveyed to petitioner was $7,257.23. Petitioner purported to convey to the trustee by quitclaim deed all of her right, title and interest in the other dower lands, having a value of $593,233.28, but this conveyance was subject to and limited by the terms of the agreement pursuant to which the deed was executed and delivered.

The agreement gave to the trustee the right, during the term of petitioner's life, to "possess, manage and control the dower lands" and required the trustee to "account to Mrs. Woodward for one-half of the net operating income from the same as herein defined, payments to be made monthly." The agreement provided that petitioner should be "entitled to a lien on the dower lands of the same force and effect as a decree of the Chancery Court awarding dower based on the rental value of the land", to secure payment by the

trustee of her distributable share of the net operating income. The agreement also provided that petitioner should pay a proportionate part of the cost of any addition or betterment increasing the cubic content or substantially changing the character of the building, and in the event of an operating deficit, the amount thereof should be charged against the net income next thereafter maturing or petitioner's proportionate part be otherwise paid by her.

All of these provisions negative the idea that petitioner sold her dower rights for a stated consideration, but, on the other hand, strongly support respondent's contention that, under the agreement, petitioner transferred only the legal title to the trustee, reserving the beneficial interest in the property or right to receive the income for life.

By transferring to the trustee the *legal title* to her life estate in the dower lands, petitioner vested in the trustee the right to the possession, management, and control of her one-half of such lands. This latter right was undoubtedly of considerable value to the testamentary trustee, since the trustee was thereby vested with the exclusive and unrestricted control and management of all the dower lands, having a value of more than one million dollars. In exchange for such right of control the trustee transferred to petitioner the estate's interests in other properties of a value slightly in excess of seven thousand dollars. But the transfer by petitioner of the legal title to the life estate in the dower lands was specifically subject to her right to receive one-half of the net operating income therefrom for life, a right which she possessed prior to the agreement and transfer. The effect of the transaction, then, was merely to transfer the legal title to the trustee, leaving in petitioner the right to the income. The entire beneficial interest in the transferred property was retained by and remained in petitioner.

Furthermore, we think it is made plain by the thirteenth paragraph of the agreement that the beneficial interest in the transferred property remained in petitioner. That paragraph provided that petitioner should be entitled to a lien on the dower lands "of the same force and effect as a decree of the Chancery Court awarding dower based on the rental value of the lands," to secure the payment of petitioner's distributable share of the income. Certainly, a decree awarding dower would have vested in petitioner an equitable or beneficial interest, and the mortgage lien retained by petitioner had the same force and effect.

The agreement between the parties also provided that the trustee should "account to Mrs. Woodward for one-half of the net operating income," payments to be made monthly. This provision, in our opinion, clearly created a trust relationship between the testamentary trustee and petitioner. The testamentary trustee was thereby

made a trustee for petitioner, obligated to account for and pay over to petitioner her share of the income computed as provided for in the agreement.

While it may be true, as argued by the petitioner, that the word "trustee" as used in the instrument was merely descriptive and referred to the testamentary trustee, such fact does not render the testamentary trustee any the less a trustee for petitioner. Failure to designate the testamentary trustee as a trustee for petitioner, or to use particular words of trust in the instrument, is immaterial if the instrument by its terms did in fact impose a trust relationship.

It has been said many times that no particular form of words is required to create a trust, 26 R. C. L. 1180; *Chew* v. *Brumagen*, 13 Wall. 497, and the use of the word "trust" or "trustee" is not essential, *Colton* v. *Colton*, 127 U. S. 300. A trust exists where the legal title is in one person and the equitable or beneficial interest in another, or as sometimes otherwise stated, where there are rights, titles, and interests in property distinct from the legal ownership. *Seymour* v. *Freer*, 8 Wall. 202; *Love* v. *Clayton*, 134 Atl. 422, 426.

The fact that the quitclaim deed transferring the legal title and the agreement establishing the trust were separate instruments does not affect the conclusion we reach that the two instruments construed together constituted a single transaction which resulted in the creation of a trust rather than a sale of property rights. In *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390, 394, the court pointed out that,

The declaration of trust need not be contained in the instrument which transfers the legal title. It may be set forth in a separate instrument or in several instruments, provided they are related to and connected with each other, and, when construed together, establish the existence of the trust (citing authorities). Therefore, as between the parties and the corporation, the proposal, the resolution of acceptance, the assignments, and the certificate of stock constituted one transaction, and the intent of the parties must be gathered from an examination of all of these instruments.

Petitioner cites *Robert Hoe Estate Co.*, 32 B. T. A. 903; affd., 85 Fed. (2d) 4, and urges that the decision in that case is controlling here. We can not agree. The cited case is distinguishable on the facts, as is made clearly apparent in the opinion of the Circuit Court of Appeals. In that case the widow of the decedent released and transferred to a corporation her dower consummate in consideration of an agreement on the part of the corporation to pay her "annually for and during the period of her natural life, an amount  *  *  *  equal to one third share  *  *  * of the net annual income received annually by the corporation from the several plots  *  *  *  as long as the corporation shall continue to remain the owner." In the event of sale the corporation agreed to pay the widow a gross sum in lieu of her dower. The court held

that by the agreement the widow made a sale of her dower, and did not retain any interest in the lands, saying:

That she certainly did not do; the promise was not to pay her one-third of the profits in kind, to say nothing of giving her any right in the land itself; it was general and created a general obligation; had the company lost the money, even after the utmost diligence to keep it, it would still have been liable; payment and payment alone would be a discharge. The profits therefore belonged to the taxpayer, though they measured its performance to the last cent; for good or ill the parties meant the widow to part with all interest in the land and its usufruct; she was to be content with the promise alone.

In the case at bar an entirely different situation is presented. Here the widow did not exchange her dower interest for the promise of the testamentary trustee to pay "an amount equal to" one-half of the net operating income; she transferred the legal title on condition that the trustee should account for and pay over to her each month one-half of the net operating income derived from the dower lands. She was entitled to one-half of the profits in kind. The income when received by the trustee belonged to her. If the income after receipt had been lost, through no negligence of the trustee, it would have been petitioner's loss. The agreement of the parties plainly indicates that it was not intended that petitioner should part with all interest in the land and its usufruct; on the contrary the beneficial interest was vested in her and she was given a specific lien on the property of the same force and effect as a decree of the Chancery Court awarding dower to safeguard her interest and enforce an accounting and payment over of all the reserved income. The trustee could not sell the property except subject to her equitable interest, since it was provided that the agreement should be binding upon any assignee of the trustee.

However, petitioner argues that even if the principal agreement of July 16, 1931, created a trust, the income distributable thereunder to petitioner is nevertheless not taxable to her, under the doctrine of *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Stokes*, 296 U. S. 551; *Helvering* v. *Schweitzer*, 296 U. S. 551; and *Helvering* v. *Blumenthal*, 296 U. S. 552. The decisions of the Circuit Courts in the three cases last cited were reversed by the Supreme Court, *per curiam* without opinion, on authority of *Douglas* v. *Willcuts*.

In *Douglas* v. *Willcuts*, the trust income was payable to the wife of the grantor in lieu of alimony. In the *Stokes* and *Schweitzer* cases the trusts were established to provide income for the support, maintenance, and education of the minor children of the grantors, and in the *Blumenthal* case the settlor directed that the income of the trust be applied in discharge of a bank loan. In each case the income was held taxable to the grantor, because it was used for the direct benefit of the grantor in satisfying his preexisting legal obligation.

See also *Albert C. Whitaker*, 33 B. T. A. 865, and *Louis W. Hill*, 33 B. T. A. 891.

In the instant case, petitioner was the grantor, as well as benefi-ciary, of the trust, and if the income were taxable to the grantor under the doctrine of the cited cases, it would be taxable to peti-tioner. But there was no preexisting liability of the grantor which the income of the trust was used to satisfy. Hence, the income is not taxable to petitioner as grantor. And certainly the income is not taxable to the trustee, nor is any such contention made, since it was distributable currently to petitioner as beneficiary. Sec. 162 (b), Revenue Acts of 1928 and 1932. If petitioner's contentions on this point should be sustained, it would result in the income in contro-versy escaping tax altogether, a result not contemplated by the statute. By express direction of the statute, distributable income of a trust must be included in computing the net income of the bene-ficiary, whether distributed or not. The distributable income in-volved here, is, therefore, taxable to petitioner as beneficiary of the trust created by the agreement of July 16, 1931. Cf. *Helvering* v. *Butterworth*, 290 U. S. 365. Respondent's determination on the first issue is approved.

The second issue raises the question whether petitioner is entitled to reduce her distributable shares of the net operating income from the dower lands on account of any deduction for depreciation. This question must be considered in the light of materially different facts and circumstances existing during the periods prior and subsequent to July 16, 1931, embraced within the taxable years.

The first period extends from November 18, 1930, the date of de-cedent's death, to July 16, 1931, the date of the agreement between petitioner and the testamentary trustee. By the filing of a dissent to decedent's will petitioner's dower rights became dower consum-mate, and included the right to the possession, control and manage-ment of, as well as the income derived from, one-half of the Alabama realty for life. During such period petitioner owned a life estate in the lands; she and the testamentary trustee were tenants in common, having equal rights in the property during that time. As such life tenant during the period mentioned, petitioner is entitled to the de-duction for depreciation at the stipulated rate applicable to one-half of the dower property in which she owned the life estate, under the following provisions of section 23 (k), Revenue Act of 1928: "In the case of property held by one person for life with remainder to another person, the deduction [for depreciation] shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant."

The second period referred to above embraces the portion of the calendar year 1931 subsequent to July 16, and the calendar year 1932.

162

Under the first issue we have found that pursuant to the principal agreement of July 16, 1931, petitioner transferred to the trustee the legal title to her interest in the dower lands, retaining the beneficial interest or right to receive the income therefrom for life. The question of petitioner's right to any deduction for depreciation subsequent to the creation of the trust is governed by the provisions of section 23 (k), *supra*, and similar provisions of the same numbered section of the Revenue Act of 1932, reading as follows:

In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

This statute has been construed as entitling the beneficiary to the depreciation allowance, to the exclusion of the trustee, where the trust instrument provides that the income, computed without regard to depreciation, shall be distributed to a named beneficiary; and as requiring that the allowable deduction be granted in full to the trustee where the trust instrument provides that in determining the distributable income due allowance shall be made for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose. See Article 201 of Regulations 74; *Spalding Trust*, 34 B. T. A. 762.

The trust instrument in this case contains no provision empowering the trustee in determining the distributable income to make allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose. In other words, the trust instrument makes no provision for the creation of a depreciation reserve. On the other hand, it specifically provides that in determining the distributable income no deductions shall be allowed for depreciation and obsolescence as such.

It is true that the trust instrument provides that certain expenditures of a capital nature shall be deducted in determining the distributable income, but such deductions are contingent upon the making of such expenditures and only to the extent thereof. It does not appear that any such expenditures or deductions were made in either of the taxable years herein involved. The distributable income having been computed without regard to depreciation, it is our opinion that under the facts in this case and under the statute and respondent's regulations petitioner is entitled to a deduction for one-half of the total agreed depreciation on the basis of the trust income allocable to her.

On this issue respondent's action is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*