DAVID KEITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105618.    Promulgated November 7, 1941.

*Frank A. Johnson, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

### OPINION.

STERNHAGEN: The Commissioner determined an income tax deficiency of $1,163.95 for 1936, $6,257.19 for 1937, and $87.18 for 1938. Petitioner assails the inclusion in his income of portions of the income of a trust created by him. The facts are all stipulated.

Petitioner is a resident of Salt Lake City, Utah, where he filed his income tax returns. On August 17, 1926, he and his wife made an irrevocable trust agreement of which he and Walker Brothers Bankers were trustees. Petitioner and his wife were separated. To

make a property settlement for the benefit of themselves and a minor son they had conveyed to the trustees practically all their assets. Out of the whole trust estate the trustees were to pay the expenses of the property settlement, of $46,000, and of any divorce proceedings that might follow, to pay all of petitioner's indebtedness then amounting to $130,000, and that of his wife of $2,000, and to purchase and furnish a home for his wife at a cost not to exceed $25,000.

(2) The Trustees may in their discretion borrow money for the purpose of paying and/or discharging the said indebtedness, costs, charges and/or expenses, or any part thereof, and may subject the whole or any part of said trust estate to mortgages, pledges and/or other suitable forms of encumbrance for securing the payment of such indebtedness, costs, charges and/or expenses, or any part thereof, or any renewal or renewals thereof; and the trustees may in their discretion sell any portion or portions of the trust estate for said purpose. * * *

(3) The Trustees shall establish and create a sinking fund in which shall be deposited and/or set aside not to exceed 33⅓ per cent of the net income from the trust estate, which said sinking fund shall be devoted to paying and discharging the indebtedness, costs, charges and/or expenses mentioned in Section B hereof, or any indebtedness incurred to discharge the same. In the event of a sale of any portion or portions of the trust estate, as provided in Section B hereof, the said sinking fund shall be devoted to restoring to the said trust estate the amount of the proceeds of said sale. If at the time of said sale the sinking fund has not accumulated a sufficient amount so to restore to the estate the amount of the proceeds of said sale, the trustees shall continue to accumulate said sinking fund until it shall effect said restoration. * * *

(4) No distribution of the principal of the trust estate shall be made until after the discharge of all of the indebtedness, costs, charges and/or expenses described in Section B hereof, or until a sinking fund shall have been accumulated sufficient in amount to discharge all of said indebtedness, costs, charges and/or expenses.

The trustees were given the power to sell and pledge trust property and to borrow money. They were directed to collect trust income, to pay expenses, and to distribute specified portions of the income to petitioner, his wife, their son, or their appointees, and to distribute corpus. Petitioner was entitled for life to the distributable income from three of the six equal parts into which the trust corpus was divided for administration, but in no event to less than $900 a month. Distributable income was defined as net income "diminished by the amount of income set aside for sinking funds"; the trustees were prohibited from withholding its distribution. Concurrence of the corporate trustee was necessary for every act of the individual trustee.

Between August 17, 1926, and December 31, 1930, the trustees expended $232,405.84 in the discharge of indebtedness, interest, costs, charges, and expenses. To obtain these funds they sold a portion of trust corpus, receiving proceeds of $57,405.84, and borrowed

$175,000, securing payment by a mortgage on trust real estate. They created the sinking fund, depositing in it $148,380.63, which was paid out upon indebtedness incurred by them, and they sold additional portions of the trust estate for $26,619.37 (making total sale proceeds $84,025.21), which was used to discharge the balance of the indebtedness incurred by them. After December 31, 1930, nothing remained unpaid on any indebtedness which the trustees were directed to pay or which they had incurred.

In 1931 and each year thereafter the trustees deposited a portion of the trust's net income in the sinking fund, applying it toward the restoration to the trust estate of the amount of the proceeds received by them from sales of portions of the trust estate. The amount so deposited was $3,493.19 in 1936, $15,354.53 in 1937, and $100 in 1938. The trustees reported and paid tax on the net income retained. On December 31, 1938, the amounts deposited in the sinking fund and restored to the trust estate aggregated $20,687.51 and the trustees' books showed that $63,337.70 remained to be restored.

The Commissioner included in petitioner's income for 1936, 1937, and 1938 the trust income deposited in the sinking fund for the reason that it was "held by the trust in a so-called trust sinking fund created to pay your debts. * * * See Section 167, Revenue Acts of 1936 and 1938."

Section 167 is the only statutory authority upon which the Commissioner relies. That section provides for the inclusion in the income of the grantor of such part of the trust income as may be held for future distribution to him, or may be currently distributed to him, or may be used for the payment of premiums on policies insuring his life. As to the amount in question in any of the three years in question, the trust did not provide for or permit such accumulation, distribution, or use of the income. Some of the trust income was distributed to the grantor as the trust expressly prescribed, but that was returned by petitioner as his taxable income, and it is not the subject of this proceeding. The Commissioner has included in the grantor's income the additional part of trust income which was added by the trustees to the sinking fund which they had set up to restore to corpus the amount which had been used in 1926–1930 to pay the grantor's debt. This amount the Commissioner treats as if it were being currently used to discharge the grantor's debts, and thus, as in *Douglas* v. *Willcuts*, 293 U. S. 626, taxable to him as if he had received it and used it to pay such debts.

The determination can not be sustained. Whatever may have been said in 1926–1930 as to the propriety of attributing to petitioner the trust income used to discharge his debts, there is no theory upon which the income of succeeding years may be attributed to him.

It was not subject to his control or demand and was not used for his benefit to discharge any of his obligations. His obligations had been paid in 1930 and no continuing obligation was left upon him. Thereafter, except as to the distributable shares, the trust income was taxable to the trust.

*Decision will be entered under Rule 50.*