ESTATE OF CRAIG R. SHEAFFER, DECEASED, WALTER A. SHEAFFER II, AND JOHN D. SHEAFFER, EXECUTORS, AND VIRGINIA D. SHEAFFER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84269.   Filed October 31, 1961.

*Aaron Holman, Esq., I. Newton Brozan, Esq.,* and *E. H. Pollard, Esq.,* for the petitioners.

*Leo A. McLaughlin, Esq.,* and *John W. Holt, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1954 and 1955 in the amounts of $125,910.80 and $84,683.81, respectively.

The only issue remaining is whether the respondent erred in determining that in the calendar years 1954 and 1955 petitioners realized income in the amounts of $140,000 and $115,500, respectively, "on the theory that such income, which was earned by the trusts created by petitioner Virginia D. Sheaffer under a Trust Agreement dated February 2, 1954, was applied by the trustee thereof as partial payment of an alleged legal obligation of the taxpayers." (Petition)

Another issue relating to a dividend-received credit under section 34 of the Internal Revenue Code of 1954 has been conceded by the respondent and effect will be given to this concession in any recomputation to be made under Rule 50.

We find the facts as stipulated and set forth only those deemed necessary in reaching our decision.

Petitioners are husband and wife residing at High Point, Fort Madison, Iowa. They filed joint Federal income tax returns for the taxable years 1954 and 1955 with the district director of internal revenue, Des Moines, Iowa.

On February 2, 1954, petitioner, Virginia D. Sheaffer (hereinafter sometimes called Virginia), entered into an agreement as settlor with Harris Trust and Savings Bank, of Chicago, Illinois, as trustee, wherein she created four separate trusts, one for the benefit of each of her four children. The agreement allocated the corpus of the trust estate to the aforesaid trusts in the proportions of $25/70$, $25/70$, $10/70$, and $10/70$, respectively.

Upon the execution of the trust agreement, Virginia assigned and delivered to the trustee certificates totaling 70,000 shares of the common stock of W. A. Sheaffer Pen Company, to be divided among the four trusts in the proportions stated above. On December 31, 1955, the trustee held those identical certificates, i.e., none having been disposed of except that the shares were deposited by the trustee as collateral security for the loan referred to later in this Opinion.

Section I of the trust agreement reads as follows:

The trustee agrees that, to the full extent of the value of the corpus of the trust estate and the income therefrom, it will assume and pay all federal and state gift taxes (including all penalties and interest thereon, if any) which shall or may be assessed or become due from any one by reason of the transfer, assign-

ment and delivery to it of the property listed in Schedule A or by reason of the creation of the trust estate hereunder; and, notwithstanding any other provision herein, the trustee agrees to assume, and to indemnify and hold all persons whomsoever harmless against and from, any obligation or liability whatsoever which they, or any of them, shall or may have for the payment of such taxes or for the reimbursement of, or contribution to, the trustee or any person whomsoever on account of the payment of such taxes. The trustee is authorized and agrees to obtain a loan in an amount sufficient to pay all such taxes and to pledge or otherwise to apply such part or all of the corpus and income of the trust estate, and to take such other action, as shall be required or deemed advisable by the trustee in order to secure the loan. The trustee agrees to apply the proceeds of such loan in payment of such taxes.

On or about March 11, 1955, the Harris Trust and Savings Bank, the trustee of said trusts, prepared a gift tax return for Virginia with respect to the aforesaid gifts of stock to the trusts. The said return was signed by Virginia as donor; and petitioner Craig R. Sheaffer (hereinafter sometimes called Craig), as her husband, signed the consent appearing thereon to have the gifts made by them during the calendar year considered as having been made one-half by each of them.

Pursuant to the requirements of the trust agreement, the trustee filed the gift tax return on March 14, 1955, with the district director of internal revenue, Des Moines, Iowa. The amount of gift tax shown on the return was $167,559.64. At the time that it filed the return, the trustee paid the gift tax with its own check in the aforesaid amount drawn on the trust account.

On the same date that the trustee prepared the aforesaid gift tax return for Virginia, it prepared a gift tax return for Craig with respect to the aforesaid gifts of stock to the trusts. The return was signed by Craig as donor, and Virginia, as his wife, signed the consent appearing thereon to have the gifts by them during the calendar year considered as having been made one-half by each of them. Pursuant to the requirements of the trust agreement, the trustee filed the gift tax return for Craig on March 14, 1955, with the district director of internal revenue, Des Moines, Iowa. The amount of gift tax shown on the return was $159,747.40. At the time that it filed the return, the trustee paid the gift tax with its own check in the aforesaid amount drawn on the trust account.

On or about March 7, 1955, the trustee executed and filed with the district director of internal revenue, Des Moines, Iowa, trustee's information returns with respect to the aforesaid gifts of stock to each separate trust.

The gift taxes paid by the trustee on filing the aforesaid gift tax returns in the total amount of $327,307.04, were charged to the respective trusts in the proportions of $25/_{70}$, $25/_{70}$, $10/_{70}$, and $10/_{70}$ pursuant to provisions of the trust agreement.

At the time the trustee paid the aforesaid gift taxes totaling $327,-307.04, it had received income aggregating $188,607.04 for the accounts of the four trusts. Pursuant to the provisions of the trust agreement, the trustee borrowed $138,700 for the four trusts on the security of the trust assets, charging the trusts with their respective amounts thereof in the proportions stated above. The payment of the aforesaid gift taxes was thereafter made with the total of the borrowed funds and of the accumulated income then on hand.

In the gift tax return of Virginia (Schedule A), the market value of the 70,000 shares of W. A. Sheaffer Pen Company stock was reported at $24.50 per share on the date of the gift, or a total of $1,715,-000. From this amount Virginia deducted the total gift taxes of $327,307.04 paid by the trustee, leaving $1,387,692.96 as the "Value at date of gift," to which was added $9,500 of other gifts made by Virginia during 1954, thus bringing the "Total gifts of donor" for 1954 up to $1,397,192.96.

In the gift tax return of Craig (Schedule A), Craig reported "Total gifts of donor" for 1954 of $6,000 to his wife, Virginia.

Schedule A of both returns then continued thus:

| | Virginia | Craig |
|---|---|---|
| (a) Total gifts of donor | $1,397,192.96 | $6,000.00 |
| (b) Less portion [½ of (a)] * * * | 698,596.48 | –0– |
| (c) Balance | 698,596.48 | 6,000.00 |
| (d) Gifts of spouse [Item (b)] * * * | –0– | 698,596.48 |
| (e) Total gifts for year | 698,596.48 | 704,596.48 |
| (f) Less total exclusions * * * | 4,750.00 | 7,750.00 |
| (g) Total included amt. of gifts for year | 693,846.48 | 696,846.48 |
| (h) Deductions * * * | –0– | 4,570.67 |
| (i) Total deductions | –0– | 4,570.67 |
| (j) Amount of net gifts for year | $693,846.48 | $692,275.81 |

On audit of the returns the respondent determined that the value of the shares on the date of the gift was $26.3672 per share or a total of $1,845,704. The resulting deficiency in tax of $27,657.24 ($14,-132.35 for Virginia and $13,524.89 for Craig), plus interest of $4,-824.48, making a total of $32,481.72, was paid by the trustee on February 10, 1958, and charged to the four trusts in the respective proportions stated above. In determining the deficiences in gift tax against Virginia and Craig, the respondent followed the same pattern used by petitioners in their gift tax returns and, as a part of that pattern, deducted the total gift taxes of $354,964.28 from the total redetermined value of the shares of $1,845,704 to arrive at the redetermined "Value at date of gift" of $1,490,739.72.

In 1954 the trustee received dividends on the 70,000 shares of W. A. Sheaffer Pen Company stock in the amount of $140,000. These funds were used to purchase in 1954 United States Treasury notes in the amount of $136,643.14. In 1955 the trustee received dividends on the aforementioned stock in the amount of $115,500. In 1954 and 1955 the trustee received interest on the Treasury notes in the amounts of $990 and $997.46, respectively. On or about March 11, 1955, the trustee sold for $136,000 the Treasury notes purchased in 1954.

The total receipts and disbursements of the four trusts in the calendar years 1954 and 1955 were as follows:

RECEIPTS

| Dividends on stock of W. A. Sheaffer Pen Co | $255,500.00 |
|---|---|
| Interest on U.S.A. Treasury notes | 1,987.46 |
| Proceeds of sale of U.S.A. Treasury notes | 136,000.00 |
| Proceeds of loan | 202,680.00 |
| | 596,167.46 |

DISBURSEMENTS

| U.S.A. Treasury notes purchased | $136,643.14 |
|---|---|
| Interest paid on U.S.A. Treasury notes purchased | 651.76 |
| Trustee's fees and expenses | 6,508.68 |
| 1954 Federal income tax | 63,981.66 |
| Federal gift tax | 327,307.04 |
| Principal and interest payment on notes | 61,075.18 |
| | 596,167.46 |

In its income tax returns for 1954 and 1955 the trustee reported as taxable income all dividends received by it in the said years on the aforesaid 70,000 shares of stock of W. A. Sheaffer Pen Company as well as the interest income that it received in those years. The total Federal income tax paid by the trustee on the income so reported was $63,981.66.

The respondent in determining the instant income tax deficiencies against petitioners increased petitioners' taxable income as disclosed by their joint returns for 1954 and 1955 by "Dividend Income for benefit of Grantor" in the respective amounts of $140,000 and $115,500 and, in a statement attached to the deficiency notice, explained these adjustments thus:

(a) It is determined that Virginia D. Sheaffer, as a donor, and Craig R. Sheaffer, as a beneficiary, realized income of $140,000.00 in this year [1954, and $115,500 in 1955] from Virginia D. Sheaffer Trusts which were created under a Trust Agreement dated February 2, 1954, as such income was applied by the trustee as a partial payment of a legal obligation of these taxpayers.

At the outset, it may be noted that the applicable Internal Revenue Code pertaining to the instant income tax deficiencies is the 1954

Code and the applicable Code pertaining to the gift tax is the Internal Revenue Code of 1939. See sec. 7851, I.R.C. 1954.[1]

Also, at the outset it may be noted that in the statement attached to the deficiency notice the respondent refers to Virginia as a donor and to Craig as a beneficiary. For the purposes of this case, we think both Virginia and Craig must be considered as donors of the 70,000 shares of the Pen Company stock. Section 1000(f), I.R.C. 1939, provides in part:

(f) GIFT OF HUSBAND OR WIFE TO THIRD PARTY.—

(1) CONSIDERED AS MADE ONE-HALF BY EACH.—

(A) In General.—A gift made after the date of the enactment of the Revenue Act of 1948 by one spouse to any person *other than his spouse* shall, for the purposes of this chapter, *be considered as made one-half by him and one-half by his spouse* * * *.

(B) Consent of Both Spouses.—Subparagraph (A) shall be applicable only if both spouses have signified * * * their consent to the application of subparagraph (A) in the case of all such gifts made during the calendar year by either while married to the other.

[Emphasis supplied.]

On page 1 of their respective gift tax returns for 1954, both Virginia and Craig signed the "Consent of Spouse" consenting to have the gifts made by each of them to third parties considered as having been made one-half by each. This was in accordance with section 1000(f), *supra*. Accordingly, we will consider both Virginia and Craig as the donors of the 70,000 shares transferred to the trustee on February 2, 1954.

It is our opinion that the respondent properly determined that the dividends received by the trustee of $140,000 in 1954 and $115,500 in 1955 are taxable to petitioners in those years under section 677 of the Internal Revenue Code of 1954.[2] The trustee used those dividends for the benefit of petitioners in paying the greater part of their gift tax liability for the calendar year 1954 of $327,307.04. It is clear beyond

---

[1] SEC. 7851. APPLICABILITY OF REVENUE LAWS.

(a) GENERAL RULES.—Except as otherwise provided in any section of this title—

(1) Subtitle A [Income Taxes].—

(A) Chapters 1 * * * of this title shall apply only with respect to taxable years beginning after December 31, 1953, and ending after the date of enactment of this title * * *.

\* \* \* \* \* \* \*

(2) Subtitle B [Estate and Gift Taxes].—

\* \* \* \* \* \* \*

(B) Chapter 12 [Gift Tax] of this title shall apply with respect to the calendar year 1955 and all calendar years thereafter, and with respect to such years chapter 4 of the Internal Revenue Code of 1939 is hereby repealed.

[2] SEC. 677. INCOME FOR BENEFIT OF GRANTOR.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be—

(1) distributed to the grantor;

(2) held or accumulated for future distribution to the grantor * * *

doubt that petitioners are by statute, regulations, and court decisions made primarily liable for the gift tax. Section 1008(a), I.R.C. 1939, provides that "The tax imposed by this chapter shall be paid by the donor on or before the 15th day of March following the close of the calendar year." Section 86.3 of Regulations 108 provides that "the tax is a primary and personal liability of the donor." Section 1009 of the 1939 Code provides: "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." [3] In *Fletcher Trust Co.* v. *Commissioner*, 141 F. 2d 36 (C.A. 7, 1944), certiorari denied 323 U.S. 711, affirming 1 T.C. 798, the court stated, in discussing sections 509 and 510 of the Revenue Act of 1932, the predecessors of sections 1008 and 1009 of the 1939 Code, that:

> The provisions of the Act to which we have referred make plain, so we think, that the liability of the donor is primary and that of the donee secondary. In other words, it is only when the former fails to pay the tax that it becomes the liability of the latter. This is so even though the liability of the donee may attach the next day after that on which the donor becomes liable.

In the instant case the trustee paid the gift tax shown on the returns before it became due. Actually, therefore, the donee never became "personally liable for such tax" for at the time the tax was paid, the only existing statutory liabilities for the tax were those of Virginia and Craig. Even if the tax had not been paid when due, the personal liability of the donee would only run concurrently with the continuing liability of the donor. The original primary liability is that of the donor and it continues even after the donee becomes additionally liable. In this respect it would not seem important whether the donor's original and continuing liability is satisfied before or after the donee also becomes liable for the tax. Thus, in paying the tax before or by the due date, the trustee is clearly satisfying the exclusive and statutory liability of the donor. That clear and obvious fact is dispositive of this case.

In the instant case the trust agreement specifically provided that the trustee was to pay the donor's gift tax liability. Future income of the trust estate was reserved for that purpose. The trustee did pay the gift tax of $327,307.04 shown on petitioners' returns before it became due. We think the result of this reservation and payment is to make the donors taxable under section 677, *supra,* on the funds so used in their behalf to the extent of the income of $255,500 received by the trustee. *Douglas* v. *Willcuts,* 296 U.S. 1; *Lucy A. Blumenthal,*

---

[3] The tax here involved was due Mar. 15, 1955 (sec. 1008(a), I.R.C. 1939). The trustee paid the tax of $327,307.04 shown on the returns on Mar. 14, 1955, and the deficiency of $27,657.24 on Feb. 10, 1958. Since the original tax of $327,307.04 is greater than the income here in question of $255,500, we need not be concerned any further with the deficiency.

30 B.T.A. 591, revd. 76 F. 2d 507 (C.A. 2, 1935), but affd. 296 U.S. 552 (1935); *Clifton B. Russell*, 5 T.C. 974, petition for review dismissed 154 F. 2d 829; *Herbert A. Loeb*, 5 T.C. 1072, affd. 159 F. 2d 549 (C.A. 7, 1947). See also *Estate of A. E. Staley, Sr.*, 47 B.T.A. 260, affd. 136 F. 2d 368 (C.A. 5, 1943), certiorari denied 320 U.S. 786.

The *Staley* case was a case where the taxpayer who was the owner of 80 percent of a corporation's common stock, transferred into trusts created for each of his five children certain common and preferred shares. On realizing that the gift tax would exceed his available cash by approximately $150,000, the taxpayer decided upon a plan to have each of the five trusts pay over to him out of trust income all such income (after paying expenses and fees) until each trust had paid him $30,000. In holding that the grantor was taxable on the $150,000 so reserved, we said (p. 265):

The simple fact is that decedent was providing a means of securing $150,000 from the first income of the trusts, and this income he received. The fact that payment of the $150,000 was to be made out of income is indicative of decedent's retention of a right to income in that amount. See *Bettendorf* v. *Commissioner*, 49 Fed. (2d) 173. Whether we say decedent made himself a preferred beneficiary of the trusts to the extent provided, *Annie Louise Van Aken*, 35 B.T.A. 151, or that he reserved $150,000 of the income of the trusts when he made the gifts, *Michael Fay et al., Executors*, 34 B.T.A. 662, is of no particular importance in determining the fundamental question of whether or not the sum received was taxable income. * * *

We see no material difference in principle between making a gift of stock in trust with a reservation (after paying expenses and fees) of the first $150,000 of income, which the settlor intended to use to pay his gift taxes directly, as in *Staley*, and, as in the instant case, the making of a gift of stock in trust with a provision in the trust instrument that the trustee is to pay the gift tax. In both cases, income is reserved for the benefit of the donor and, under section 677, is taxable to the donor.

Petitioners contend that when the trustee paid the gift tax shown on the returns to be due, it was discharging the liability of the donees rather than that of the donor. We have previously shown herein that, under the statute, the donor is primarily liable for the gift tax and that the donee's liability arises only if the tax is not paid when due. Here, the tax shown on the gift tax returns was paid the day before it became due so, in reality, the donees in the instant case never became liable for the tax that was paid on March 14, 1955. However, even if the tax had not been paid when due and the donees had become personally liable therefor under section 1009 of the 1939 Code, the liability of the donor would nevertheless continue until the tax was paid. The case of *Edwards* v. *Greenwald*, 217 F. 2d 632 (C.A. 5, 1954), is of no help to petitioners. In that case the trustees of certain

trusts paid off certain indebtedness for which they were *primarily* liable, whereas in the instant case Congress has made the donor primarily liable for the tax, which liability continues until the tax is paid.

We sustain the respondent's determination on the authority of the cases previously mentioned. Because of the concession made by the respondent relating to a dividend-received credit,

*Decision will be entered under Rule 50.*