ESTATE OF ANNETTE S. MORGAN, DECEASED, WILLIAM H. MORGAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88298.    Filed February 21, 1962.

*Howard M. Kohn, Esq.,* and *C. W. Landefeld, Esq.,* for the petitioner.

*Buckley D. Sowards, Esq.,* for the respondent.

FAY, *Judge:* The Commissioner determined deficiences in income tax of the decedent for the years 1957 and 1958 in the amounts of $13,238.26 and $26,686.82, respectively. The only issue for decision is whether certain income of trusts created by the decedent is taxable to her.

FINDINGS OF FACT.

Most of the facts are stipulated and are found as stipulated.

The decedent resided during the taxable years in question in the city of Cleveland, Ohio. She filed timely Federal income tax returns for these years with the district director of internal revenue at Cleveland.

On October 18, 1955, the decedent created certain irrevocable trusts in favor of her issue consisting of 41,600 shares of stock in the Morgan Engineering Company, hereinafter referred to as the Morgan stock. The stock at that time had a value of approximately $1 million. The decedent's son, William H. Morgan, and her attorney, Robert S. Pflueger, were made trustees.

The trust agreement imposed upon the trustees the duty of paying the gift taxes incurred in connection with the gift and contained the following language relative thereto:

The parties hereto expressly agree that the trustees shall pay any and all gift and/or other taxes occasioned by the transfer herein, and that the stock is transferred subject to the trustee's obligation to pay all such taxes. The trustees shall make all necessary arrangements for and attend to the payment of all said taxes, and may raise funds for such purpose by selling a portion of the transferred stock and/or by borrowing, the decision to sell stock and/or to borrow to be made in accordance with the sole discretion of the trustees. In the event the trustees decide to borrow money to pay said taxes, they are hereby authorized to borrow money from any source and pledge any part or all of the assets herein transferred, and to repay such borrowings using for such purpose any funds in their possession.

The trust instrument also contained the following language with regard to holdings of the Morgan stock by the trust:

The settlor requests the trustees, although no duty is imposed on them in this regard, to retain as an investment of the trusts created by this instrument the common stock of the Morgan Engineering Company originally placed in the trusts hereunder, and the common stock or other securities of any concern which shall succeed to the whole or a substantial part of the assets or business of the Morgan Engineering Company, even though such an amount of securities of one company may not be considered suitable as an investment by trustees. Furthermore, if at any time there are trust funds to be invested, the settlor requests the trustees, although no duty is imposed on them in this regard, to purchase, if available, and retain as an investment of the trusts created hereunder the common stock of The Morgan Engineering Company and the common stock or other securities of any concern which shall succeed to the whole or a substantial part of the assets or business of The Morgan Engineering Company.

This language was included to protect the trustees from any charge of negligence which might arise from their continued holding of the Morgan stock, which stock was not listed on any stock exchange.

The decedent incurred a Federal gift tax in the amount of $186,-664.86 for the year 1955 by reason of the transfer in trust. This

gift tax was calculated by using as the amount of the gift the value of the stock given, less the amount that would be required to pay the Federal gift tax on the transfer. The decedent filed a gift tax return with the district director of internal revenue at Cleveland, Ohio, reflecting a gift tax of $186,664.86. On or about April 16, 1956, William H. Morgan, acting as trustee, arranged for a loan from the Philadelphia National Bank in the same amount as the gift tax determined to be due. The loan was made to the trustees who signed a note which was guaranteed by William H. Morgan, personally. The 41,600 shares of Morgan stock were pledged as security for the loan. The decedent had no contact with the bank in connection with the arrangement or payment of this loan and was not liable for its payment. In 1956 the trustees paid the gift tax with the proceeds of the loan. The decision to obtain the money to pay the gift tax by borrowing was made by the trustees, and the decedent took no part in making such decision.

Payments were made on the loan by the trustees from the dividends on the Morgan stock. In 1957 the trustees paid the bank $8,770.32 in interest on the loan and repaid $21,664.86 of the principal. In 1958 they paid $7,318.95 in interest and repaid $40,000 of the principal.

The Commissioner determined that the amounts paid to the bank with respect to the loan in 1957 and 1958 should be included in the income of the decedent.

The decedent received no benefit from the fact that the money to pay her gift tax was obtained by borrowing rather than by selling a part of the trust corpus.

### OPINION.

The respondent contends that the payments made on the loan obtained to pay the decedent's gift tax were in substance payments of the decedent's legal obligation and are therefore taxable to her under section 677(a) of the Internal Revenue Code of 1954.[1]

This Court has recently held that income of a trust used to pay the settlor's gift tax liability is taxable to the settlor. *Craig R. Sheaffer*, 37 T.C. 99 (1961). However, in the present case the trustees

---

[1] SEC. 677. INCOME FOR BENEFIT OF GRANTOR.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or in the discretion of the grantor or a nonadverse party, or both, may be—

    (1) distributed to the grantor;

    .(2) held or accumulated for future distribution to the grantor; or

    (3) applied to the payment of premiums on policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for a purpose specified in section 170(c) (relating to definition of charitable contributions)).

This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished.

had paid the gift tax of the settlor in 1956, a year prior to the taxable years before the Court. The parties have stipulated that the amount of the gift tax equaled the amount paid. Therefore, the trustees' discretion to use income of the trust to pay the decedent's gift tax was extinguished in 1956. It is not argued that the trustees could have used income from the trusts for the benefit of the decedent in any manner after 1956 unless repayment of the sums borrowed by the trustees may be considered such a payment.

The respondent argues that repayment of this loan does constitute payment by the trust of the decedent's legal obligation because the substance of the transaction is that the income of the trust res was used to pay the decedent's gift tax. In support of this contention the respondent cites *Clifton B. Russell*, 5 T.C. 974 (1945), appeal dismissed 154 F. 2d 829 (C.A. 1, 1946). In the *Russell* case the settlor established an irrevocable trust in certain stock which he held outright and in his equity in other stock which was pledged for his personal debt of $25,000. The trustee was authorized to pay the debt for which this stock was pledged. The trustee borrowed $20,000 from the settlor and used this sum, together with $5,000 of income of the trust, to discharge the debt in 1940. The trustee made payments on the loan from the settlor in 1940 and 1941 out of the income of the trust. This Court held the substance of the transaction was that the income of the trust was used to pay the personal obligation of the settlor and that this could have been done without the consent of an adverse party. Therefore, the amount of the payments made to the settlor on the loan was held taxable to him. That case is distinguishable from the present case. In *Russell* the loan was made between related parties—the settlor and the trustee. In the present case the loan was an arm's-length transaction with an independent party— the bank, and the settlor took no part in the transaction. Further, in *Russell* the income of the trust was paid to the settlor in satisfaction of his loan. In the present case the decedent's interest in the property of the trust terminated immediately upon the payment of the gift tax.

Section 677 (a) of the Internal Revenue Code of 1954, *supra*, clearly evidences a congressional intent that a settlor of a trust, in order to avoid tax on the income of the trust property, must receive no benefit from the income of the property without the consent of an "adverse party." Furthermore, it is clear that we should not allow the taxpayer to accomplish indirectly what Congress has prohibited. On the surface this transaction appears to be but an indirect method for diverting the income of the trust property to the decedent. It appears that income of the trust property was anticipated by obtaining the loan, the proceeds of which were given to the decedent. The loan was then repaid from the income of the trust as it was realized.

Upon analysis, however, this illusion disappears. Surely had the decedent sold a sufficient amount of the Morgan stock to pay the gift tax and given the remainder to the trust, she would not be subject to tax on any part of the trust income. The result would be the same if the stock had been given to the trustees and they had then sold a portion to pay the tax, at least in years after the gift tax was paid. Did the decedent then receive any monetary benefit from the method by which the trustees chose to discharge the trust obligation to pay the gift tax? Her gift tax obligation was paid when due and that is the sole benefit she would have received no matter what method had been chosen by the trustees to obtain funds for this purpose. The manner of obtaining the money was chosen independently by the trustees who were authorized to select whatever method they deemed advisable. Of course, the fact that the trustees chose to obtain money by borrowing and then repaying the loan from income means that the trust retained more corpus and less income. This, however, did not benefit the decedent because she retained no interest in the trust and could not recover the corpus. Therefore, since the decedent received no benefit from the fact that the trustees borrowed to discharge her gift tax obligation and repaid the loan from trust income, she cannot be held to have constructively received the income used to repay the loan.

This case, therefore, is controlled by our decision in *David Keith*, 45 B.T.A. 644 (1941), acq. 1942-1 C.B. 10, a case which arose under section 167 of the Revenue Acts of 1936 and 1938, which section was a predecessor of section 677 (a) of the 1954 Code. In that case, which involved a trust established in 1926, the trustees had been authorized to sell property and/or to borrow money to pay certain debts of one of the settlors. They acquired the funds to pay the debts by both selling property and borrowing. By the end of 1930 both the debts of the settlor and the debts which the trustees incurred to pay them had been discharged. In 1931 and each year thereafter the trustees accumulated income in a sinking fund pursuant to the trust instrument to replace that portion of corpus that had been used to pay the settlor's debts. In holding the accumulated income not taxable to the settlor, we said:

Whatever may have been said in 1926–1930 as to the propriety of attributing to petitioner the trust income used to discharge his debts, there is no theory upon which the income of succeeding years may be attributed to him. It was not subject to his control or demand and was not used for his benefit to discharge any of his obligations. His obligations had been paid in 1930 and no continuing obligation was left upon him. Thereafter, except as to the distributable shares, the trust income was taxable to the trust.

The same considerations apply in the present case.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

TIETJENS, *J.*, dissenting: The gift tax was the primary obligation of the settlor. Had the income of the trust been used directly to pay the gift tax, such payment would have been taxable income to the settlor. *Craig R. Sheaffer*, 37 T.C. 99. Here the trustees took a roundabout method. They first borrowed money with which they paid the gift tax and then repaid the loan from trust income. It seems to me that the substance of the transactions is the same in both cases, i.e., the liability of the settlor is discharged by income from the trust. In either case the settlor should be taxed on the trust income. *Clifton B. Russell*, 5 T.C. 974.

TURNER and RAUM, *JJ.*, agree with this dissent.