VICTOR W. KRAUSE AND ESTATE OF GERTRUDE C. KRAUSE, DECEASED, GORDON C. KRAUSE, ADMINISTRATOR, C.T.A., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2878-69. Filed August 31, 1971.

*Lewis A. Engman* and *R. Malcolm Cumming*, for the petitioners.
*Gary F. Walker*, for the respondent.

#### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1964 in the amount of $91,249.05. The issue for decision is whether funds derived by trusts from dividends and loans and used, pursuant to the trust instruments, to pay the gift taxes resulting from the creation of the trusts are income taxable to petitioners.

Victor W. Krause (hereinafter referred to as petitioner) and Gordon C. Krause, administrator of the Estate of Gertrude C. Krause, were legal residents of Rockford, Mich., at the time they filed their petition. Gordon C. Krause is a petitioner herein only because Gertrude C. Krause and petitioner filed a joint income tax return for 1964. They filed the return with the district director of internal revenue, Detroit, Mich.

The facts, all stipulated, show that during September of 1963, petitioner created three trusts: One for the benefit of the children of his

son, Gordon C. Krause (hereinafter the Gordon trust), and one for the benefit of the children of each of his daughters, Elizabeth K. Sherwood and Ruth K. Sherwood (hereinafter the Elizabeth and Ruth trusts, respectively). To the Gordon trust, petitioner transferred 12,000 shares of common stock in Wolverine Shoe & Tanning Corp. To the Elizabeth and Ruth trusts, respectively, he transferred 8,000 shares of common stock in the same corporation. The total value of the stock was $807,000, and petitioner's basis in it was $21,700.

The Gordon trust agreement provides:

2. The Trustees shall promptly pay all Federal Gift Taxes and all other taxes which shall arise out of or be attributable to the transfer by this Trust Agreement of the above mentioned shares of corporate stock, and said corporate stock is transferred hereby subject to the duty and obligation of the Trustees to promptly pay all such taxes. In order to provide funds with which to pay said taxes the Trustees in their sole and absolute discretion may sell and convert to cash such portions of said corporate stock as they may deem necessary for that purpose or they may borrow sufficient funds for that purpose from such sources, including themselves or either of them, as they may deem proper, and pledge any part of the principal and income of this Trust as security for such loan, or they may obtain funds for the payment of all such taxes partly by sale of assets of said Trust and partly by loan secured by all or any part of the principal and income of this Trust, all in accordance with their sole and absolute discretion.

3. All income and earnings of this Trust shall be used and applied by the Trustees in such amounts and at such times as they in their sole and absolute discretion from time to time shall determine for the following purposes, namely:

First—for the payment of all taxes and assessments and other governmental charges which may be lawfully imposed upon the principal and/or income of this Trust.

Second—for the payment of all proper charges and expenses incurred by the Trustees and their agents and attorneys in and about the faithful administration of this Trust.

The Elizabeth and Ruth trust agreements contain basically similar provisions, differing only in that each further provides that the trustees—

may obtain funds for the payment of all such [gift] taxes partly by sale of assets of the principal of said trust, partly from income thereof, and partly by loan secured by all or any part of the principal and/or income of this trust * * *

In April of 1964, the trustees of the three trusts pledged the stock which they had received from petitioner to Old Kent Bank & Trust Co., one of the trustees, as security for loans in the total amount of $134,500.[1] With these funds, the trustees, on April 14, 1964, paid the joint and several gift tax liabilities of petitioner and his wife, both of whom had consented pursuant to section 2513 to having the gifts

---

[1] Loans in the original amounts of $65,700, $42,600, and $42,600 were made to the Gordon, Elizabeth, and Ruth trusts, respectively, on Apr. 14, 1964, but the trusts on the same day made payments on the loans in the amounts of $7,200, $4,600, and $4,600, respectively.

treated as made one-half by each of them. The total amount of taxes so paid was $134,331.65.

During their fiscal years ending August 31, 1964, the trusts received the following amounts of dividend income:

|  | Sept. to Apr. 14 | Apr. 15 to Aug. 31 | Total |
|---|---|---|---|
| Gordon | $3,600 | $4,050 | $7,650 |
| Elizabeth | 2,400 | 2,700 | 5,100 |
| Ruth | 2,400 | 2,700 | 5,100 |
| Total | 8,400 | 9,450 | 17,850 |

Beginning in September of 1964 and continuing through August of 1970, the trusts made periodic payments to Old Kent Bank & Trust Co. to discharge the loans and the interest thereon. These payments were made with dividend income received by the trusts from the stock.

The Code provides generally that the gift tax "shall be paid by the donor." Sec. 2502.[2] When a husband and wife have consented to have a gift made by one of them treated as if made one-half by each of them, they are jointly and severally liable for the full amount of the tax liability arising from the transfer. Sec. 2513(d). The donee, under section 6324(b), is personally liable for the tax only if it is not paid when due. *Fletcher Trust Co.* v. *Commissioner*, 141 F. 2d 36, 39 (C.A. 7, 1944), affirming 1 T.C. 798 (1943), certiorari denied 323 U.S. 711 (1944). Thus, notwithstanding his agreements with the trustees and his wife, petitioner was liable under the Code for the payment of all the gift taxes arising from the transfers to the trusts.

Relying upon these Code provisions, respondent determined that petitioner transferred "stock in trust for several donees, reserving an income interest in the transfer for the payment of * * * [his] gift tax liability in the amount of $134,331.65; and that * * * [his] reservation of the income interest subjects * * * [him] to the provisions of section 677 of the Internal Revenue Code * * *. Accordingly, the net income of the trusts in 1964 is taxable to * * * [him] in the amount of $14,091.62." Respondent further determined that petitioner's "income interest in the trusts terminated in 1964 when the trusts paid * * * [his] gift tax liability in full; and that such payment, from funds other than trust income, constitutes a purchase in liquidation of * * * [his] income interest and results in ordinary income" in the additional amount of $120,240.03.

Section 677(a) provides in pertinent part:

---

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

The grantor shall be treated as the owner of any portion of a trust * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be—
(1) distributed to the grantor;

Amplifying this provision, section 1.677(a)–1(d), Income Tax Regs., provides:

(d) Under section 677 a grantor is, in general, treated as owner of a portion of a trust whose income is, or in the discretion of the grantor or a nonadverse party, or both, may be applied in discharge of a legal obligation of the grantor. * * *

When the grantor is treated as "the owner of any portion of a trust," section 671 provides that there shall be included in the computation of his taxable income "those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account * * * in computing taxable income or credits against the tax of an individual."

Sections 671 and 677 are part of subpart E, part I, subchapter J, of the 1954 Code. This subpart includes revised versions of 1939 Code sections 166 and 167 and certain regulations issued under 1939 Code section 22(a), the so-called Clifford [3] and Mallinckrodt [4] regulations. The subpart "provides rules to determine when a trust's income is to be taxed to the grantor because of the grantor's substantial dominion and control of the trust property or income." S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 86 (1954). Section 677 corresponds with section 167 of the 1939 Code, and it deals with the grantor's retention of dominion and control over the trust income.

To the extent of the amount of the income realized by the trusts prior to the payment of the gift taxes ($8,400), respondent's position is quite clearly correct. Where a person transfers property to a trust and, as a condition to the transfer, the trustee agrees to pay the resulting gift tax liability, the donor is taxable on any trust income which the trustee may use for that purpose. Within the meaning of section 677, he is treated as an owner of a portion of the trust because its income, in the discretion of the trustee, may be used to discharge his legal obligation. Under section 671, the donor is taxable on the income attributable to such portion of the trust—i.e., the income which may be used to

---

[3] *Helvering* v. *Clifford,* 309 U.S. 331 (1940) ; Regs. 118, sec. 39.22(a)–21.
[4] *Mallinckrodt* v. *Nunan,* 146 F.2d 1 (C.A. 8, 1945), affirming 2 T.C. 1128 (1943), certiorari denied 324 U.S. 871 (1945) ; Regs. 118, sec. 39.22(a)–22.

discharge his legal obligation to pay the gift tax. *Estate of Craig R. Sheaffer*, 37 T.C. 99 (1961), affd. 313 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818 (1963) ; *Estate of A. E. Staley, Sr.*, 47 B.T.A. 260 (1942), affd. 136 F. 2d 368 (C.A. 5, 1943), certiorari denied 320 U.S. 786 (1943). It is of no avail to petitioner in the instant case that the proceeds of the loans rather than the trust income were used for this purpose. The controlling consideration under section 677 is the described "discretion," not the way in which that discretion is actually exercised.

Petitioner contends that the trustees of the Gordon trust were prohibited from using trust income for the payment of the gift taxes. In support of his contention, petitioner points out that paragraph 2 of the Gordon trust agreement does not specifically authorize the use of the income to pay such taxes, whereas the corresponding provisions in the Elizabeth and Ruth trust instruments do. We, however, do not attach the same significance to this difference in language as does petitioner.

Paragraph 2 of the Gordon trust agreement, quoted above, is permissive; it allows the trustee to sell part of the corpus or to borrow on the corpus to pay the gift taxes, but it does not prohibit the use of trust income for this purpose. Indeed, paragraph 3, dealing with trust income, gives the trustee wide discretion to use the trust income "for the payment of *all* taxes and assessments * * * which may be lawfully imposed upon the principal and/or income" (emphasis added) of the trust and "for the payment of all proper charges and expenses incurred by the Trustees and their agents and attorneys." Since the trust agreements required the trustees to pay the gift tax liabilities arising from the transfers in trust, such liabilities became proper charges against the principal and income of the trusts. The trustees, therefore, had the discretionary power to use the trust income to meet this charge without violating the trust agreement. In these circumstances, sections 671 and 677 require all such income received prior to the payment of the taxes to be included in petitioner's taxable income.

The income received by the trusts after April 14, 1964, when the gift taxes were paid, however, is not taxable to petitioner. As a result of the payment of the taxes, all of his obligations with respect thereto were satisfied, and, within the meaning of section 1.677(a)–1(d), *supra*, he had no further obligations to which the trust income could be applied. Thus, the payment of the gift taxes denuded petitioner of every interest in the trusts, and section 1.677(a)–1(c), Income Tax Regs., provides: "If the grantor strips himself permanently and defini-

tively of every interest * * * he is not treated as an owner under section 677 after that divesting." [5]

Since petitioner, after April 14, 1964, no longer had any interest in the trusts within the meaning of section 677, none of the trust income received after that date is taxable to him. This is the rationale and holding of *Estate of Annette S. Morgan*, 37 T.C. 981 (1962), affirmed per curiam 316 F. 2d 238 (C.A. 6, 1963), certiorari denied 375 U.S. 825 (1963); *David Keith*, 45 B.T.A. 644 (1941), acq. 1942-1 C.B. 10.

Although the income which the Commissioner sought to tax in *Estate of Annette S. Morgan* and *David Keith* was actually received by the trusts in years subsequent to the ones in which the gift taxes were paid, the reasoning which those cases employ does not permit a different rule for the trust income received during the portion of the taxable year remaining after the taxes are paid. Neither represents trust income received during a period when the donor is treated as the owner of a portion of the trusts under section 677. Quite obviously if a beneficiary dies during a trust's fiscal year and after his death the trust income is to be distributed to someone else, he is not taxable on the income received by the trust during the entire year. See, e.g., *D. G. McDonald Trust*, 19 T.C. 672 (1953), acq. 1953-2 C.B. 5, affirmed sub nom. *Chase National Bank* v. *Commissioner*, 225 F. 2d 621 (C.A. 8, 1955). Similarly, where, as in the instant case, the grantor is divested of all interest in the trust during a taxable year, he is not taxable on the subsequently received income of the trust.[6] We hold petitioner is not taxable on the income received by the trusts between April 14, 1964,

---

[5] The language of sec. 39.167–1(b)(5), Regs. 118, is even more explicit in stating that a grantor whose interest in a trust has been extinguished does not thereafter realize taxable income from the trust as follows:

5. If the grantor strips himself permanently and definitely of every * * * interest retained by him [which would cause the trust income to be taxed to him under sec. 167, I.R.C. 1939], the income of the trust realized after such divesting takes effect is not taxable to the grantor. * * *

The differences in the language of this regulation and the current regulation sec. 1.677(a)–1(c), quoted in the text, are only differences in form. Sec. 677 treats the grantor as the owner of a portion of the trust if income may be distributed or applied for his benefit; sec. 167, I.R.C. 1939, on the other hand, requires the portion of the trust income which may be used for the grantor's benefit to be included in his gross income. Both sections, however, were designed to aid in achieving the same objective—i.e., "to determine when a trust's income is to be taxed to the grantor because of the grantor's substantial dominion and control of the trust property or income," S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., pp. 86, 371 (1954).

[6] Trust income is, of course, computed on an annual basis, and situations may arise where the income which is taxable to the grantor can be computed only by reference to a trust's receipts and disbursements for an entire taxable year. Such a situation is not presented in this case, however, since the parties have stipulated to the amount of income received prior to Apr. 14, 1964, and petitioner has not shown that the trusts were entitled to any deductions which might be properly allocable to the income taxable to him.

the date of the gift tax payment, and August 31, 1964, the end of the trusts" fiscal years.[7]

Contrary to respondent's contention, payment of the gift taxes with borrowed funds did not constitute a purchase or liquidation of income interests retained by petitioner. His retained interests were not limited to the right to have the trust income applied toward the payment of the gift taxes. He had the right to have the gift taxes paid out of any available funds, whether borrowed, obtained from corpus, or derived from dividends on the transferred stock. In a very real sense, his gifts in trust consisted of only the excess of the value of the stock over the amount of the gift taxes. *Richard H. Turner*, 49 T.C. 356, 363 (1968), affirmed per curiam 410 F. 2d 752 (C.A. 6, 1969) ; *Sarah Helen Harrison*, 17 T.C. 1350, 1357 (1952), acq. 1952–2 C.B. 2. If petitioner had transferred to the trusts, along with the stock, sufficient cash to pay the gift taxes, the use of the cash for that purpose would not have generated any taxable income. Similarly, the use of cash derived from pledging the entrusted stock did not generate any taxable income. Significantly, the pre-April 14, 1964, trust income is taxable to petitioner not because of any requirement that the gift taxes be paid out of income but because the trust income, within the meaning of section 677, was subject to being used for that purpose at a time when petitioner was personally liable for the tax. When the gift taxes were paid through use, in part, of the reserved portions of the corpora, petitioner's interests in the trust terminated, but he realized no taxable income therefrom.

Alternatively, respondent contends that petitioner's transfer in trust was part gift and part sale, and that he realized capital gain, measured by the difference between the sales price for enough stock to pay the gift tax obligation and his basis therein. This argument was previously considered and rejected in *Richard H. Turner, supra*, where after reviewing numerous cases this Court said (p. 362) :

> In all of the above cases, both in a gift tax and income tax context, the major premise of each decision is that a condition imposed by the transferor that the transferee will pay the gift tax resulting therefrom does not alter the result that the transfer constituted a gift. The rationales of the above cases are totally inconsistent with a finding that the transfer was a part sale, part gift. * * *

We adhere to the authority of that case.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERRETT, *J.*, dissents, with respect to the majority's determination that petitioners realized any taxable income under sections 671 and 677.

---

[7] The language on this point in *Estate of Craig R. Sheaffer*, T. C. Memo, 1966–126 ("If a taxpayer is found to be a substantial owner of a portion of a trust under the provisions of sections 671 through 678, then he is taxable on all the income of such portion during the entire taxable year in issue."), does not represent the views of this Court. This issue was present but not considered in *Estate of Craig R. Sheaffer*, 37 T.C. 99 (1961), affd. 313 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818 (1963).