Estate of Craig R. Sheaffer, Deceased, and Estate of Virginia D. Sheaffer, Deceased, Walter A. Sheaffer, II, and John D. Sheaffer v. Commissioner.
Estate of Sheaffer v. Commissioner
Docket No. 4146-64.
United States Tax Court
T.C. Memo 1966-126; 1966 Tax Ct. Memo LEXIS 156; 25 T.C.M. (CCH) 646; T.C.M. (RIA) 66126; June 10, 1966
*156 In 1954 petitioners transferred 70,000 shares of S Corporation stock to four irrevocable trusts they created for their children. In 1955, pursuant to the trust agreement, the corporate trustee timely paid petitioners' 1954 gift tax liability out of accumulated trust income and funds borrowed on the security of the trust corpus. Held, that the 1956 trust income used by the trustee to pay the balance of the 1955 loan is not taxable to petitioners under sec. 677(a), I.R.C. 1954. Estate of Annette S. Morgan, 37 T.C. 981 (1962), affirmed per curiam 316 F. 2d 238 (C.A. 6, 1963), certiorari denied 375 U.S. 825 (1963), followed. In 1957 petitioners and respondent agreed on the amount of gift tax deficiency plus interest owed by petitioners. In 1958 the trustee timely paid such amount with accumulated 1957 trust income and funds borrowed on the security of the trust corpus prior to the receipt by the trusts of any 1958 income. Held, that 1958 trust income, in an amount equal to petitioners' gift tax deficiency plus interest paid by the trustee in 1958, is taxable to petitioners under sec. 677(a), I.R.C. *157 1954 and sec. 1.677(a)-1(d), Income Tax Regs.Estate of Craig R. Sheaffer, 37 T.C. 99 (1961), affirmed 313 F. 2d 738 (C.A. 8, 1962) certiorari denied 375 U.S. 818 (1963), followed. Karl D. Loos, 208 S. LaSalle St., Chicago, Ill., and John A. Whitney, for the petitioners. James B. Morgan, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income taxes of petitioners for the taxable *160 years 1956 and 1958 in the amounts of $60,684.74 and $22,100.35, respectively. The only issue for decision is to what extent did the petitioners realize income where they, as grantors, transferred stock in trust upon the condition that the trustee discharge their gift tax liability arising by virtue of the transfer, and where the trustee was authorized to and did use trust income to pay part of the gift taxes directly and to pay off a loan, the proceeds of which were used to pay the balance of the gift taxes. Findings of Fact Most of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein and made a part of our findings by reference. Craig R. Sheaffer and Virginia D. Sheaffer (hereinafter sometimes called petitioners) were husband and wife residing at High Point, Fort Madison, Iowa. Craig R. Sheaffer died July 9, 1961, and is represented herein by his estate. Virginia D. Sheaffer died on March 18, 1965, and is represented herein by her estate. For the calendar years 1956 and 1958 the petitioners filed joint Federal income tax returns with the district director of internal revenue, Des Moines, Iowa. *161 On February 2, 1954, Virginia D. Sheaffer entered into an irrevocable trust agreement as grantor with the Harris Trust and Savings Bank, Chicago, Illinois, as trustee. The agreement created four separate trusts, one for the benefit of each of her four adult children, Walter A. Sheaffer, II, John D. Sheaffer, Harriet Sheaffer Taylor, and Susan Sheaffer Taylor. The trust agreement allocated the corpus of the trust estate to the aforesaid trusts in the proportions of 25/70, 25/70, 10/70, and 10/70, respectively. Craig R. Sheaffer consented to the gifts made in trust by his wife, and the gifts were considered as having been made one-half by each of them. Upon execution of the trust agreement Virginia D. Sheaffer assigned and delivered to the trustee as the corpus of the trust 70,000 shares of common stock of the W. A. Sheaffer Pen Company to be divided among the four trusts in the proportions mentioned above and to be held and administered pursuant to the terms thereof. At all times here relevant, the trustee held these shares, except that the shares were pledged as collateral security for the loans referred to hereafter. The trust agreement provided, in part, as follows: SECTION *162 I: The trustee agrees that, to the full extent of the value of the corpus of the trust estate and the income therefrom, it will assume and pay all Federal and state gift taxes (including all penalties and interest thereon, if any) which shall or may be assessed or become due from anyone by reason of the transfer, assignment and delivery to it of the property listed in Schedule A or by reason of the creation of the trust estate hereunder; and, notwithstanding any other provision herein, the trustee agrees to assume, and to indemnify and hold all persons whomsoever harmless against and from, any obligation or liability whatsoever which they, or any of them, shall or may have for the payment of such taxes or for the reimbursement of, or contribution to, the trustee or any person whomsoever on account of the payment of such taxes. The trustee is authorized and agrees to obtain a loan in an amount sufficient to pay all such taxes and to pledge or otherwise to apply such part or all of the corpus and income of the trust estate, and to take such other action, as shall be required or deemed advisable by the trustee in order to secure the loan. The trustee agrees to apply the proceeds of such *163 loan in payment of such taxes. * * *
SECTION V: The income and principal of the trust estate shall be administered and distributed as hereinafter provided. 1. Each of the four trusts created hereunder shall be charged with the payment of the loan mentioned in SECTION I hereof in the proportion which its share of the original corpus of the trust estate shall bear to the total original corpus; and, subject to the terms of such loan, or any extension or modification thereof, and to any action taken by the trustee in the exercise of its discretionary power to pay income to beneficiaries, the trustee in its sole and uncontrolled discretion may in the case of each of the said trusts, first apply the net income therefrom in making interest and principal payments in reduction and discharge of the charge against such trust for the payment of such loans. On or about March 11, 1955, the Harris Trust and Savings Bank, as trustee, prepared a gift tax return for Virginia with respect to the gifts of stock to the trusts. The return was signed by Virginia as donor; and Craig signed the consent appearing thereon to have the gifts made by them during the calendar year considered as having *164 been made one-half by each of them. On the same date the trustee prepared a gift tax return for Craig with respect to the gifts of stock to the trusts. This return was signed by Craig as donor, and Virginia signed the consent. These gift tax returns showed the gift taxes on the 1954 transfer in trust of the W. A. Sheaffer Pen Company stock attributable to Virginia D. Sheaffer as being $167,559.64 and those attributable to Craig R. Sheaffer as being $159,747.40, or a total of $327,307.04. Both of petitioners' gift tax returns were filed with the district director of internal revenue, Des Moines, Iowa, on March 14, 1955. Pursuant to the requirements of the trust agreement, the total gift taxes due were paid on March 14, 1955, by the trustee with its own checks drawn on the trust account. The amounts paid were charged to the respective trusts in the proportions of 25/70, 25/70, 10/70, and 10/70 pursuant to the provisions of the trust agreement. At the time the trustee paid the gift taxes totaling $327,307.04, it had received income aggregating $188,607.04 for the accounts of the four trusts. Pursuant to the provisions of the trust agreement, the trustee borrowed $138,700 for the four *165 trusts on the security of the trust assets, charging the trusts with their respective amounts thereof in the proportions stated above. The payment of the gift taxes was thereafter made with the total of the borrowed funds and accumulated income then on hand. Subsequently, after audit of the gift tax returns, the petitioners and the Commissioner on December 23, 1957, reached agreement on a gift tax deficiency of $27,657.24. On January 17, 1958, the Commissioner notified petitioners of the amount of the deficiency and on February 10, 1958, the trustee paid $27,657.24 plus $4,824.48 interest, or a total of $32,481.72. Such amounts were charged to the four trusts in their respective proportions. When the trustee paid the deficiency there was $9,280.50 of accumulated 1957 trust income on hand. Pursuant to the provisions of the trust agreement, the trustee borrowed $23,201.22, pledging the trust assets as security, and combined this amount with the accumulated trust income to pay the deficiency. The loan was repaid with income later received in 1958 by the trustee. Respondent determined that petitioners realized income of $32,481.72 in 1958 by virtue of the payment of petitioners' gift *166 tax liability by the trustee. Craig R. Sheaffer and Virginia D. Sheaffer filed joint Federal income tax returns for the calendar years 1954 and 1955. In a notice of deficiency dated October 9, 1959, the respondent determined that in the calendar years 1954 and 1955 petitioners realized income in the amounts of $140,000 and $115,500, respectively, because such income, earned by the trusts, was applied in partial payment of a legal obligation (gift taxes) of the petitioners. The determination resulted in the assertion of income tax deficiencies of $120,008.64 for 1954 and $78,352.25 for 1955. These deficiencies were paid after review by this Court [Estate of Craig R. Sheaffer, 37 T.C. 99 (1961)] and by the United States Court of Appeals for the Eighth Circuit [Sheaffer's Estate v. Commissioner, 313 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818 (1963)]. The amounts added to the income of petitioners in 1954 and 1955 totalled $255,500 and represented all the income from the Sheaffer stock received by the trustee in 1954 and 1955. The difference between that total and the $327,307.04 in gift taxes paid by the trustee on March 14, 1955, was *167 $71,807.04. By notice of deficiency dated June 23, 1964, the respondent added $71,807.04 to petitioners' income for 1956 and determined a deficiency in their 1956 income taxes in the amount of $60,684.74. The amount of $71,807.04 represented part of the income of the trust during 1956 and was used by the trustee to repay the balance of the $138,700 loan that had been obtained in March 1955 to pay part of the gift tax. The trustee had previously made a $3,268.32 payment on the loan in 1955. During the years 1954 through 1958 the trustee received the following dividends on the shares of stock in the trusts: 1954
$140,000
1955
115,500
1956
126,000
1957
126,000
1958
84,000
The March 1955 loan of $138,700 was repaid by the trustee as follows: 1955
$ 3,268.32
1956
107,454.34
1957
27,977.34
Total
$138,700.00
During 1958 the trustee received the following dividends on the shares of stock in the trusts: February 25
$21,000
May 26
21,000
August 25
21,000
November 25
21,000
Total
$84,000
The loan of $23,201.22 was subsequently repaid from income by the trustee subsequent to February 10, 1958, as follows: 1958
$16,290.94
1959
6,910.28
Total
$23,201.22
*168 On August 31, 1964, after filing their petition in this case, the petitioners paid the deficiencies determined by the respondent ($60,684.74 for 1956 and $22,100.35 for 1958) in the total amount of $82,785.09 plus interest of $33,991.13. Opinion We have previously held in the Estate of Craig R. Sheaffer, 37 T.C. 99 (1961), affd. 313 F. 2d 738 (C.A. 9, 1963), certiorari denied 375 U.S. 818 (1963), that the petitioners, whose representatives are before us now, were taxable on all the 1954 and 1955 dividend income received by the four irrevocable trusts they created for their four children in 1954. Such income was taxed to petitioners because it was, or could have been, used by the trustee in 1955 to pay their gift tax liabilities which arose upon the transfer of corpus to the trustee. Petitioners contend that they and the trustee were co-obligors and that the payment of a liability by one obligor does not generate income to the co-obligor. Having previously considered this argument, found no coextensive liability, and concluded that the petitioners were "by statute, regulations, and court decisions made primarily liable for the gift tax, *169 " we see no need to reexamine the point. We adopt the language of our first Sheaffer opinion (37 T.C. at p. 105) as controlling.[1]
Petitioners claim that they should prevail here because of our decision in Estate of Annette S. Morgan, 37 T.C. 981 (1962), affirmed per curiam 316 F. 2d 238 (C.A. 6, 1963), certiorari denied 375 U.S. 825(1963). They argue that the prior Sheaffer case is inconsistent with Morgan and that we should overrule our decision in Sheaffer. Respondent, on the other hand, contends that the 1956 dividend income of the trusts is taxable to petitioners under section 677(a), Internal Revenue Code of 1954, [2] to the extent of the amount of the excess of the gift taxes paid by the trustee in 1955 over the amount of the 1954 and 1955 trust income taxed to petitioners. He maintains he should prevail by virtue of our first Sheaffer decision; he agrees with *170 petitioners that Sheaffer and Morgan are inconsistent; and he asks us to overrule Morgan. While the parties may agree that Sheaffer and Morgan are inconsistent, we do not share their view for reasons set forth below. In short, we regard both cases as partially controlling here. *171 In most respects the facts in Morgan are substantially similar to those of Sheaffer. Annette S. Morgan also transferred a substantial amount of stock into certain irrevocable trusts she created for her issue. The trust agreement directed the trustee to pay the grantor's gift tax liability (arising from the transfer of corpus to the trustee) out of income, corpus, or loans obtained by hypothecating the corpus. It provided that: The parties hereto expressly agree that the trustees shall pay any and all gift and/or other taxes occasioned by the transfer herein, and that the stock is transferred subject to the trustee's obligation to pay all such taxes. The trustees shall make all necessary arrangements for and attend to the payment of all said taxes, and may raise funds for such purpose by selling a portion of the transferred stock and/or by borrowing, the decision to sell stock and/or to borrow to be made in accordance with the sole discretion of the trustees. In the event the trustees decide to borrow money to pay said taxes, they are hereby authorized to borrow money from any source and pledge any part or all of the assets herein transferred, and to repay such borrowings using *172 for such purpose any funds in their possession. The transfer of stock into trust was made in 1955. The trustee paid the grantor's gift tax liability in 1956 with funds borrowed by the trustee on the security of the trust corpus. It was determined that the amounts of trust income paid by the trustee to the lending bank in 1957 and 1958, with respect to the loan made in 1956, were includable in the income of the grantor for the years 1957 and 1958. Disagreeing with respondent's determinations, we said (37 T.C. at pp 983-984): This Court has recently held that income of a trust used to pay the settlor's gift tax liability is taxable to the settlor. Craig R. Sheaffer, 37 T.C. 99 (1961). However, in the present case the trustees had paid the gift tax of the settlor in 1956, a year prior to the taxable years before the Court. The parties have stipulated that the amount of the gift tax equaled the amount paid. Therefore, the trustees' discretion to use income of the trust to pay the decedent's gift tax was extinguished in 1956. It is not argued that the trustees could have used income from the trusts for the benefit of the decedent in any manner after 1956 *173 unless repayment of the sums borrowed by the trustees may be considered such a payment. In addition, we said we would follow our previous decision in David Keith, 45 B.T.A. 644 (1941), acq. 1942-1 C.B. 10. In analyzing this case, which arose under section 167 of the Revenue Acts of 1936 and 1938, a predecessor of section 677(a), we commented (p. 985) as follows: In that case, which involved a trust established in 1926, the trustees had been authorized to sell property and/or to borrow money to pay certain debts of one of the settlors. They acquired the funds to pay the debts by both selling property and borrowing. By the end of 1930 both the debts of the settlor and the debts which the trustees incurred to pay them had been discharged. In 1931 and each year thereafter the trustees accumulated income in a sinking fund pursuant to the trust instrument to replace that portion of corpus that had been used to pay the settlor's debts. In holding the accumulated income not taxable to the settlor, we said: "Whatever may have been said in 1926-1930 as to the propriety of attributing to petitioner the trust income used to discharge his debts, there is no theory *174 upon which the income of succeeding years may be attributed to him. It was not subject to his control or demand and was not used for his benefit to discharge any of his obligations. His obligations had been paid in 1930 and no continuing obligation was left upon him. Thereafter, except as to the distributable shares, the trust income was taxable to the trust." Precisely the same considerations apply here to the extent of the deficiency determined by respondent in petitioners' 1956 income tax. We can conceive of no theory under which we can continue to tax trust income to petitioners in years subsequent to the year in which their legal obligation was satisfied. It is axiomatic that a taxpayer must receive some benefit from payments made by a trust in order to be taxable on its income under section 677(a). In 1955 the petitioners got the only benefit they could have foreseeably received under the provisions of the trust agreement, i.e., the payment of their 1954 gift tax liabilities. [3] Under the plain meaning of section 677(a), petitioners were taxable on all trust income accumulated before, and earned in, 1955 which could have been, or was, applied to the payment of any of their *175 legal obligations. We so held in the prior Sheaffer case. However, the legal obligations that existed in 1955 were completely discharged by the trustee in that year. Although the trustee did make the final payments on the 1955 loan in 1956, the petitioners never had the remotest liability, direct or indirect, on this trust obligation. Respondent argues that the application of section 677(a) is based on the concept of a reserved interest or ownership rather than the receipt of benefit concept applicable under section 61. Since the loan payments were made by the trustee pursuant to the direction of the petitioners in the trust instrument, it is the respondent's contention that petitioners are taxable under the following rule contained in section 1.677(a)-1(c), Income Tax Regs *176 : Therefore, under the general rule of section 677 the grantor is treated as the owner of a portion of a trust if he has retained any interest which might, without the approval or consent of an adverse party, enable him to have the income from the portion, at some time, distributed to him either actually or constructively (subject to the exception described in paragraph (e) of this section). Constructive distribution to the grantor includes payment to another in obedience to his direction and payment of premiums upon policies of insurance on the grantor's life (other than policies of insurance irrevocably payable for charitable purposes). [Emphasis supplied.] The language of the Senate Finance Committee Report, [4] some of which respondent quotes to us, belies respondent's argument. S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), page 371, reads, in part, as follows: This section also corresponds to section 167 of existing law under which income is taxed to the grantor by reason of a power to vest the income in him or to apply it to his benefit. * * *
Under existing law, section 167 applies to income which may, in the discretion of the grantor or a non-adverse party, *177 be distributed to the grantor, but not, by its terms, to income which is actually so distributed or required to be distributed. Accordingly, while section 167(a)(2) has been applied, as in Helvering v. Stuart (317 U.S. 154), to tax to the grantor income which the grantor has the power to apply to the discharge of his legal obligations, income which is required to be so applied has been taxed to the grantor under section 22(a). Douglas v. Willcuts 296 U.S. 1.) Since the two types of trusts have the common characteristic of providing for disposition of income (actual or contingent) to or for the benefit of the grantor, they are both appropriately within this subpart. Accordingly, section 677 is made applicable to mandatory as well as discretionary trusts of the character described. [Emphasis supplied.] To be consistent with the statutory history of section 677(a), the regulation must be read to mean that a payment by a trustee to another, in obedience to a grantor's direction, *178 must be for the benefit of the grantor in order to be taxable to him. Otherwise, the respondent's argument, carried to its logical conclusion, would result in any and all distributions from a trust pursuant to the trust agreement being taxable to the grantor. We think the sentence immediately following the above-quoted material from section 1.677(a)-1(c) of the regulation is in accord with our view that there is no deficiency in the 1956 income tax of petitioners. The sentence tells us that, "If the grantor strips himself permanently and definitively of every interest described in the first sentence of this paragraph, he is not treated as an owner under section 677 after that divesting." We have already concluded that petitioners had no interest in the trusts in 1956; hence there was no constructive distribution to them in 1956 because the payments on the loan in that year were not for their benefit. We hold that the petitioners are not taxable on any 1956 trust income. [5]
*179 Next we turn to the income tax deficiencies asserted against petitioners for 1958. The facts for that year are substantially the same as the facts for the year 1955 discussed in our first Sheaffer opinion. Petitioners stress that the gift tax deficiency and interest were paid in 1958 with accumulated 1957 trust income and the proceeds of the 1958 loan, and that the total amount was paid on February 10, 1958, before the trusts received any dividend income for that year. Consequently, with respect to that part of the gift tax deficiency and interest paid from accumulated 1957 trust income ($9,280.50), the petitioners contend that respondent's notice of deficiency is for the wrong year - 1958 instead of 1957. They further contend that, to the extent the deficiency was paid with the 1958 loan proceeds, they should prevail under the theory of Morgan because no legal obligation of the petitioners existed after the date of the payment and no 1958 trust income was available at that time. We disagree. If a taxpayer is found to be a substantial owner of a portion of a trust under the provisions of sections 671 through 678, then he is taxable on all the income of such portion during the entire *180 taxable year in issue. See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 371 (1954); section 1.677(a)-1(b), Income Tax Regs. There was more than enough 1958 trust income ($84,000) to cover the gift tax deficiency and interest of $32,481.72 paid by the trustee in 1958. Clearly the legal obligation of petitioners for the 1958 gift tax deficiency and interest was discharged in that year within the meaning of section 1.677(a)-1(d), Income Tax Regs.[6] Therefore, on the authority of the first Sheaffer case, we hold for the respondent on this issue. Accordingly, Decision *181 will be entered under Rule 50. Footnotes
1. See Estate of Craig R. Sheaffer v. Commissioner, 313 F. 2d 738, 740-741 (C.A. 8, 1963), certiorari denied 375 U.S. 818↩ (1963), where the Court of Appeals, in affirming us, expressed agreement with our analysis.
2. SEC. 677. INCOME FOR BENEFIT OF GRANTOR. (a) General Rule. - The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be - (1) distributed to the grantor; (2) held or accumulated for future distribution to the grantor, or (3) applied to the payment of premiums on policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for a purpose specified in section 170(c) (relating to definition of charitable contributions)). This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished. All section references will be to the Internal Revenue Code of 1954 unless otherwise designated.↩
3. Petitioners did have a continuing contingent interest in the trust because the trust agreement provided for the payment of any tax deficiencies, interest, or penalties that might be asserted. However, even though respondent did assert a deficiency in petitioners' gift tax in 1958, we believe that at the end of the calendar year 1955 such contingent interest was too remote to tax petitioners on the 1956 trust income.↩
4. The language of the Report of the Ways and Means Committee of the House of Representatives is substantially the same. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A217 (1954).↩
5. We acknowledge, as we did in Estate of Annette S. Morgan, 37 T.C. 981, 984 (1962), affirmed per curiam 316 F. 2d 238 (1963), certiorari denied 375 U.S. 825↩ (1963), that "On the surface this transaction appears to be but an indirect method for diverting the income of the trust property to the [decedents]." However, respondent's sole theory on this issue is that certain income earned by the four trusts in 1956 is taxable to petitioners because such income was applied by the trustee in payment of their legal obligation. We reject this argument as unsound.
6. § 1.677(a)-1 Income for benefit of grantor; general rule. * * *
(d) Under section 677↩ a grantor is, in general, treated as owner of a portion of a trust whose income is, or in the discretion of the grantor or a nonadverse party, or both, may be applied in discharge of a legal obligation of the grantor. However, see § 1.677(b)-1 for special rules for trusts whose income may not be applied for the discharge of any legal obligation of the grantor other than the support or maintenance of a beneficiary whom the grantor is legally obligated to support.