Estate of Kenneth W. Davis, Deceased, Kenneth W. Davis, Jr., Independent Executor, and Estate of Alice B. Davis, Deceased, Kenneth W. Davis, Jr., Administrator with will annexed v. Commissioner.
Estate of Davis v. Commissioner
Docket No. 5703-69.
United States Tax Court
T.C. Memo 1971-318; 1971 Tax Ct. Memo LEXIS 15; 30 T.C.M. (CCH) 1363; T.C.M. (RIA) 71318; December 20, 1971, Filed Whitfield J. Collins, Cantey, Hanger, Gooch, Cravens & Munn, 1800 1st Nat'l Bank Bldg., Fort Worth, Tex., and Allan Howeth, for the petitioner. Harold L. Cook, for the respondent. DAWSON
Memorandum Opinion Dawson, j/udge: Respondent initially determined a deficiency in petitioner's Federal income tax for the year 1965 in the amount of $315,162.11. In his amended answer filed on March 22, 1971, respondent claimed an increased deficiency of $424,714.06, resulting in a total asserted deficiency of $739,876.17. The issues presented for decision are: (1) Did the petitioner realize taxable income of any kind in 1965 resulting from the gift of corporate stocks to one of his sons and to two trusts for two other sons expressly conditioned on the payment of the requisite gift tax by the several donees? (2) If the petitioner-donor did, in fact, realize taxable income from the gift tax payment by the donees, what is the character of that income? (3) What basis, if any, in the gift tax income is the petitioner entitled to claim? All of the facts have been stipulated. The stipulation of facts and exhibits *17 attached thereto are incorporated herein by this reference. Kenneth W. Davis and Alice Bond Davis (hereinafter sometimes referred to as Kenneth, Sr. and Alice) were husband and wife during the years 1960 to 1965. Alice B. Davis died on February 27, 1967, and Kenneth W. Davis died on August 29, 1968. The petitioner is their son, Kenneth W. Davis, Jr., who is the Administrator with Will Annexed of his mother's estate, and the Independent Executor of his father's estate. Any reference to petitioner hereinafter will include both Kenneth W. Davis, Alice B. Davis and their estates. At the time the petition was filed in this proceeding the petitioner had his legal residence at Fort Worth, Texas. Kenneth W. Davis and Alice B. Davis filed joint Federal income tax returns for 1964 and 1965 with the district director of internal revenue at Dallas, Texas. Additionally, Kenneth W. Davis and Alice B. Davis timely filed individual Federal gift tax returns in 1964 with the district director, each paying a gift tax of $690,659.11. On December 20, 1941, Kenneth W. Davis and Alice B. Davis executed a trust instrument which established three irrevocable trusts for the benefit of their three sons, *18 Kenneth W. Davis, Jr., Thomas Cullen Davis and William Seldon Davis. Into these trusts Kenneth, Sr., and Alice transferred 1,020 shares of Class A common capital stock and 1,830 shares of Class B common capital stock of Mid-Continent Supply Company in equal amounts to the three trusts. At the time of the filing of the petition herein the Kenneth W. Davis, Jr. Trust had been terminated pursuant to the 1941 trust instrument and the corpus of that trust turned over to the beneficiary, Kenneth W. Davis, Jr. The Thomas Cullen Davis Trust and the William Seldon Davis Trust were still in existence. Thus the gifts of corporate stock made by Kenneth, Sr., and Alice in 1964 were made to Kenneth W. Davis, Jr., as an individual and to the pre-existing trusts of the other two sons. The first series of gift transfers made in 1964 by Kenneth, Sr., occurred as follows: (1) On April 27, 1964, Kenneth W. Davis made a transfer of 180,000 shares of Cummins Sales & Service, Inc., stock (hereinafter referred to as Cummins) to the following persons or entities: Number of
shares
Kenneth W. Davis, Jr
60,000
Thomas Cullen Davis Trust
60,000
William Seldon Davis Trust 60,000
Total
180,000
*19 (2) On April 30, 1964, Kenneth W. Davis made a transfer of 24,240 shares of Cummins Sales & Service, Inc., stock to the following persons or entities: Number of
shares
Kenneth W. Davis, Jr
8,080
Thomas Cullen Davis Trust
8,080
William Seldon Davis Trust 8,080
Total
24,240
The 204,240 shares of Cummins Sales & Service, Inc., stock had a total fair market value of $1,405,171.20 as of April and/or May 1964 and Kenneth, Sr., had a basis in this stock of $13,124.05. On the dates indicated, the following persons or entities issued their checks to Kenneth W. Davis: 1365 Date Check Cashed
Check Issued By
Amount
April 27, 1964
Kenneth W. Davis, Jr
$412,800.00
April 30, 1964
Kenneth W. Davis, Jr
55,590.40
April 27, 1964
Thomas Cullen Davis Trust
412,800.00
April 30, 1964
Thomas Cullen Davis Trust
55,590.40
April 27, 1964
William Seldon Davis Trust
412,800.00
April 30, 1964
William Seldon Davis Trust 55,590.40
Total
$1,405,171.20
The Thomas Cullen Davis Trust and the William Seldon Davis Trust each owned 875 shares of common stock in Dorris Ballew, Inc. In early 1964 this corporation was being liquidated, *20 and cash and other assets were being distributed to the shareholders. Cash of $546,875 was distributed to each of the two trusts on or just prior to April 2, 1964, and a deposit for this amount was made on April 2, 1964, to the checking account of the William Seldon Davis Trust at the First National Bank of Fort Worth and for the same amount of April 2, 1964, to the checking account of the Thomas Cullen Davis Trust at the First National Bank of Fort Worth. On or just prior to April 20, 1964, additional distributions of cash of $54,687.50 were made to both trusts, and on April 20, 1964, deposited to the same accounts. On or just prior to April 20, 1964, cash of $70,028.08 was received by both trusts, resulting from sale of certain equipment received from Dorris Ballew, Inc., and on April 20, 1964, deposited to the same accounts. These funds, deposited in the checking accounts of the two trusts, represented the source of funds used by the two trusts to write the checks dated April 27, 1964, and April 30, 1964. Long term capital gain resulting from the distributions from Dorris Ballew, Inc., was reported by each trust in its 1964 income tax return, Form 1041. In a letter dated September 14, 1964, Kenneth *21 W. Davis, Sr., informed Kenneth W. Davis, Jr., the Thomas Cullen Davis Trustee and the William Seldon Davis Trustee that the April and May stock transfer had erroneously been handled as sales rather than as gifts. Kenneth Sr. further stated that he intended the Cummins Sales & Service stock to be gifts to the doness subject to the donees' agreement to pay all gift taxes which accrue by virtue of the transactions. The three donees agreed to the terms of the gifts and Kenneth Sr. delivered personal promissory notes to the donees in the aggregate amount of $1,405,171.20 ($468,390.40 per donee) bearing interest at the rate of 4 1/2% per annum. Kenneth Sr. subsequently redeemed all the promissory notes on April 15, 1965, paying the full principal with interest. On August 6, 1964, Kenneth Sr. made additional gifts to the following persons or entities of certain shares of Class A MidContinent Supply Co. stock (hereinafter referred to as Mid-Continent): Number of
shares
Kenneth W. Davis, Jr
65,886
Thomas Cullen Davis Trust
65,886
William Seldon Davis Trust 65,886
Total
197,658
The 197,658 shares of Mid-Continent stock had a total fair market value of $4,546,134 *22 and Kenneth Sr. had a basis in this stock of $107,545.72 on August 6, 1964. The terms of the Mid-Continent stock transfer were identical to those of the Cummins stock transfer. Kenneth Sr. wrote to the three donees on August 6, 1964, setting forth the conditions: The gift to each of you is made subject to the condition that you assume and agree to pay whatever gift tax is imposed by reason of the gift of the Mid-Continent Supply Co. shares to you. One third of such tax to be paid by Kenneth Davis, Jr. individually and one third each to be paid by the two trusts. If you are willing to accept the gift of this Mid-Continent stock subject to this condition and assume and agree to pay all gift taxes which may accrue by virtue of this transaction, so indicate by signing and returning to me a copy of this letter. I will then cause to be delivered to you stock certificates, representing the shares of Mid-Continent Supply Co. Class A stock, which are the subject of this gift. It is further understood by your acceptance of this agreement that you will undertake to file the gift tax returns which may be due by reason of such gift and pay the tax which may be shown thereon and in addition *23 to pay any additional gift tax which might therefore be assessed by reason of this gift, all such payments to be made proportionately by each of you. 1366 The three doness signed Kenneth Sr.'s letter as requested and the stock was transferred to the donees. Pursuant to their agreements in the August 6, 1964, and September 14, 1964, letters, the son and the two trusts paid the petitioner's [1] 1964 gift tax liability on the gifts of the Cummins stock and the Mid-Continent stock by issuing their checks totaling $1,381,318.22 to Kenneth Sr. as follows: (a) Check dated April 15, 1965, in the amount of $460,439.40 from Kenneth W. Davis, Jr. (b) Check dated April 14, 1965, in the amount of $460,439.41 from the Thomas Cullen Davis Trust. (c) Check dated April 14, 1965, in the amount of $460,439.41 from the William Seldon Davis Trust. The original source of the funds used by the Thomas Cullen Davis Trust and the William *24 Seldon Davis Trust to make their respective payments of $460,439.41 in 1965 to Kenneth Sr. was from the liquidation of their investment in the Dorris Ballew Corporation. The source of funds used by Kenneth W. Davis, Jr., to pay his portion of the tax is not known. During the years 1964 and 1965 neither the Cummins stock nor the Mid-Continent stock paid dividends. The primary issue in this case is whether or not petitioner realized taxable income in 1965 as a result of his son and the trusts for two other sons paying the gift tax in 1965 on the transfer of stock to them by petitioner in 1964. With respect to the transfer of shares to the individual, the issue is whether the conditional transfer was a net gift, as contended by petitioner, or a part sale, part gift as contended by respondent. With respect to the transfer of shares to the two trusts, the issue is whether the conditional transfer was also a net gift, as contended by the petitioner, or a "retention of an income interest in each trust" in the amount of the gift tax paid, as contended by respondent. We will begin with the taxable effect of the transfer to the trusts. Petitioner does not contest the general proposition *25 that the donor is primarily liable for payment of the gift tax under section 2502. [2] In addition, it is recognized that when a husband and wife have consented to have a gift made by one of them treated as if made one-half by each of them, they are jointly and severally liable under section 2513(d) for the full amount of the tax liability arising from the transfer. The liability of the donee is secondary and arises only if the donor does not pay the tax when due. Fletcher Trust Co. v. C0mmissioner, 141 F. 2d 36, 39 (C.A. 7, 1944), affirming 1 T.C. 798 (1943), certiorari denied 323 U.S. 711 (1944). Section 677(a) provides in relevant part: (a) GENERAL RULE. - The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse *26 party is, or, in the discretion of the grantor or a nonadverse party, or both, may be - (1) distributed to the grantor or the grantor's spouse; (2) held or accumulated for future distribution to the grantor or the grantor's spouse; Section 1.677(a)-1(d), Income Tax Regs., provides, in part: (d) Under section 677 a grantor is, in general, treated as owner of a portion of a trust whose income is, or in the discretion of the grantor or a nonadverse party, or both, may be applied in discharge of a legal obligation of the grantor. Respondent contends that the petitioner "retained an income interest in the two trusts when he made the trusts agree that they must pay the gift tax on the stock transferred to the trusts." Having thus retained an income interest in the trust income under section 677, it is respondent's position that petitioner is taxable in the amount of the gift tax paid under section 671 which provides in relevant part: SEC. 671. TRUSTINCOME, DEDUCTIONS, *27 AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS. Where it is specified in this subpart that the grantor or another person shall 1367 be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. In support of his position, respondent cites Estate of A. E. Staley, Sr., 47 B.T.A. 260 (1942), affd. 136 F. 2d 368 (C.A. 5, 1943), certiorari denied 320 U.S. 786 (1943), and Estate of Craig R. Sheaffer, [3]37 T.C. 99 (1961), affd. 313 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818 (1963). The Sheaffer case, relying on Staley, held that trust income which the trustee had discretion to use to pay the donor's gift tax liability was taxable to the donor under section 677. In both cases the Commissioner sought *28 to tax trust income to the donor during those years in which the gift tax obligation was a charge on the trusts; specifically, the year of the gift and the subsequent year when the gift tax was paid. *29 The Staley and Sheaffer I cases are distinguishable from the instant case. In Staley the trust instrument specifically provided that the donor would receivee $150,000 out of the income [4] of the trusts established to receive his gifts. His executor unsuccessfully argued that the $150,000, $30,000 from each of the five trusts, was paid by the trustees "in consideration" of the stock transfer. This Court held the transfer to be a gift and the $150,000 income to the donor. The Court of Appeals, in affirming this Court, stated that the gift - was an outright transfer for no consideration, but with a reservation to the donor of a portion of the income *30 Petitioner in this case transferred the Cummins and Mid-Continent stock subject to the donee trusts paying their portion of the Federal gift tax. There is no language in either the August 6, 1964, or September 14, 1964, letters of petitioner setting forth the gift conditions which can be construed to indicate anything other than a net gift. Richard H. Turner, 49 T.C. 356, 363 (1968), affirmed per curiam 410 F. 2d 752 (C.A. 6, 1969). Indeed, the 1941 trust agreement by which the trustees were bound contains no language reserving a trust income interest to the donors. Article X(d) of that instrument appears to prohibit such a reservation: (d) Except as expressly limited in this instrument, the Trustees shall have as full and complete power to manage, operate, control, sell, lease, rent, use and dispose of, any property belonging to these Trusts as they would have if they were the absolute owners thereof in fee simple. But the Trustees shall never have or exercise any power to revoke these Trusts, or any part thereof, or to use the income arising from the trust properties, or any part thereof, for the benefit of the Trustors, or either of them. Sheaffer *31 I offers no help to respondent either. In that case, the Court, relying upon Staley, found that the trust instrument gave the trustee discretion to apply trust income to the payment of the gift tax. Such income 1368 was therefore reserved for the benefit of the donor and taxable to him. Here the respondent does not seek to tax current trust income earned by a trust and reserved for the benefit of the donor by a discretionary payment clause of the trust. He merely seeks to tax the payment made by the trustees in accordance with the terms of the gift transfer as ordinary income to petitioner. Presumably, respondent does not seek to tax trust income of the transferred stock in the years 1964-1965 since it has been stipulated that neither of the two stocks paid dividends during those years. The two trusts paid their respective portions of the gift tax with cash assets on hand. The cash had been paid to the trusts in 1964 as a result of the liquidation of the Dorris Ballew Corporation, a company whose stock was owned in the amount of 875 shares per trust. The gifts by the petitioner were made subsequent to the time the trusts received the proceeds of the liquidation. The transfer *32 by this petitioner is unlike those cases where the dividend income of the transferred gift shares is or may be used to pay the gift tax. Petitioner intended and made a net gift of the stock to the trusts. The stocks were transferred to trusts which had ample assets to pay the tax without waiting for the gift stock to pay dividends. Respondent's contention that petitioner retained an income interest in the trusts which was [were] liquidated or purchased by which was [were] liquidated or purchased by merit. We rejected it in Victor W. Krause, 56 T.C. No. 95 (1971). In Krause the donor transferred property to three trusts for his grandchildren subject to the trustees agreeing to pay the gift tax. The gift tax was paid by pledging the transferred stock on a loan, the proceeds of which were used to pay the tax. The Commissioner argued that the payment of taxes with borrowed funds constituted a purchase of income interests by the donor. In rejecting this argument, we stated: Contrary to respondent's contention, payment of the gift taxes with borrowed funds did not constitute a purchase or liquidation of income interests retained by petitioner. His retained interests *33 were not limited to the right to have the trust income applied toward the payment of the gift taxes. He had the right to have the gift taxes paid out of any available funds, whether borrowed, obtained from corpus, or derived from dividends on the transferred stock. In a very real sense, his gifts in trust consisted of only the excess of the value of the stock over the amount of the gift taxes. Richard H. Turner, 49 T.C. 356, 363 (1968), affirmed per curiam 410 F. 2d 752 (C.A. 6, 1969); Sarah Helen Harrison, 17 T.C. 1350, 1357 (1952), acq. 1952-2 C.B. 2. If petitioner had transferred to the trusts, along with the stock, sufficient cash to pay the gift taxes, the use of the cash for that purpose would not have generated any taxable income. Similarly, the use of cash derived from pledging the entrusted stock did not generate any taxable income. Significantly, the pre-April 14, 1964, trust income is taxable to petitioner not because of any requirement that the gift taxes be paid out of income but because the trust income, within the meaning of section 677, was subject to being used for that purpose at a time when petitioner was personally *34 liable for the tax. When the gift taxes were paid through use, in part, of the reserved portions of the corpora, petitioner's interest in the trusts terminated, but he realized no taxable income therefrom. Finally, as to respondent's contention that the gift to the trusts and to the individual son were part-gift, part-sale, we quote the concluding paragraph of the Krause case: Alternatively, respondent contends that petitioner's transfer in trust was part gift and part sale, and that he realized capital gain, measured by the difference between the sales price for enough stock to pay the gift tax obligation and his basis therein. This argument was previously considered and rejected in Richard H. Turner, supra, where after reviewing numerous cases this Court said (at 362): In all of the above cases, both in a gift tax and income tax context, the major premise of each decision is that a condition imposed by the transferor that the transferee will pay the gift tax resulting therefrom does not alter the result that the transfer constituted a gift. The rationales of the above *35 cases are totally inconsistent with a finding that the transfer was a part sale, part gift. We adhere to the authority of that case. The Turner case involved stock transfers to an individual subject to the donee paying the gift tax and the Krause case involved similar conditional stock transfers to trusts. In both cases the Court rejected respondent's part gift, part sale contention. We will continue to adhere to the authority of those cases. Having concluded that the petitioner realized no taxable income in 1965 from 1369 payment of the gift tax by the donees, it is unnecessary for us to consider respondent's contentions as to the character of the income received or the petitioner's basis in the income. Decision will be entered for the petitioner. Footnotes
1. The doness paid the joint and several gift tax liabilities of Kenneth Sr. and Alice, both of whom had consented pursuant to section 2513, Internal Revenue Code of 1954↩, to having the gifts treated as made one-half by each of them.
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Hereinafter referred to as Sheaffer I Subsequent to the first Sheaffer case the same parties returned to the Court with the case of Estate of Craig R. Sheaffer, T.C. Memo. 1966-126 (hereinafter referred to as Sheaffer II). The Commissioner sought to tax to the petitioner-trust income received by the trust in the year subsequent to the payment of the gift tax on the theory that the trust income was used to repay a loan secured by the trustees to pay the required gift tax. The Commissioner also sought to tax to the petitioner-trust income used to pay a gift tax deficiency on the original gifts. Finding the holdings in the first Sheaffer case and the case of Estate of Annette S. Morgan, 37 T.C. 981 (1962), affd. 316 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818↩ (1963), not inconsistent, the Court held Morgan applied to the trust income used to repay the loan and thus was not taxable to petitioner. The Court then held that the first Sheaffer case applied to the trust income used to repay the gift tax deficiency and thus was taxable to petitioner. The Court's rationale in the second Sheaffer case turns on the point in time when the trust discharges whatever obligation it owes to the donor. At that moment, the donor's interest, if any, in the trust income is extinguished and no subsequent trust income is taxable to him.
4. The portion of the trust agreement dealing with this provision stated in relevant part: Article Third: Out of the income derived and received by my said Trustee from the Trust Estate, the Trustee shall: * * * (c) After the Trustee has made the payments in (a) and (6) of this Article Third hereof mentioned, the Trustee shall out of the income by it received up to and including March 15, 1935, pay to the Donor the entire income by it received out of said Trust Estate, in satisfaction of the consideration of Thirty Thousand Dollars ($30,000) as hereinbefore provided, but in no event shall such payment to the Donor exceed the sum of Thirty Thousand Dollars ($30,000).↩