Kenneth W. DAVIS, Jr., et al.

v.

The UNITED STATES of America.

No. CA 4–1761.

United States District Court,
N. D. Texas,
Fort Worth Division.

Feb. 27, 1974.

Cantey, Hanger, Gooch, Cravens & Munn by Cecil E. Munn, Fort Worth, Tex., for appellants.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., and Tax Div. Attys., Ben A. Douglas and William W. Guild, Fort Worth, Tex., for appellee.

## MEMORANDUM OPINION ON POST-VERDICT MOTIONS

BREWSTER, District Judge.

This suit for refund of income taxes and interest, tried before a jury, is now before the Court on post-verdict motions. The plaintiffs' motion is for judgment on the verdict and the defendant's is for judgment non obstante veredicto. The Court is of the opinion that judgment should be entered for the plaintiffs for the reasons hereinafter set out.

This controversy grew out of the transfer by the taxpayers, Mr. and Mrs. Kenneth W. Davis, of a total of 204,240 shares of corporate stock in Cummins Sales and Service, Inc., to their sons, Kenneth W., Jr., Thomas Cullen and William Seldon, divided equally among them so that each one got 68,080 shares. The taxpayers claimed that the transfers were gifts, and the Internal Revenue Service insisted that they were sales. Under one contention the taxpayers were liable for gift tax, and, under the other, for income tax. Considering the amount

of tax involved, the difference in the amounts owing under the two theories is not relatively large.

Mr. and Mrs. Davis died after the deficiency assessments and before the filing of this suit. The claim for refund is being prosecuted by their heirs and legal representatives.

The Cummins stock was community property of the taxpayers, but Mr. Davis made the decisions in regard to the transfers. He considered for some time whether to sell the stock to his boys, or to give it to them with the understanding that they would pay such federal gift tax as might be imposed on the transfer. He finally decided on the latter course. Mr. Davis, as chief executive of Ken Davis Industries International, Inc., which operated oil industry related businesses throughout the world, was too involved and out of town too much to be burdened with details of consummating transactions, so he turned the matter over to Mr. Strittmatter to carry out according to instructions. Mr. Strittmatter, an accountant by profession, was Vice-President and Treasurer of Ken Davis Industries International, and held executive titles in some of the companies making up the Ken Davis Industrial complex. He had the authority necessary to administer the consummation of business transactions such as the ones involved in this case for Mr. Davis and each of the three boys.[1] Mr. Strittmatter misunderstood the way the transaction was to be carried out, and consummated the transfers as sales rather than as gifts. When Mr. Davis found out several months later how the transaction had been handled, he took the necessary steps to reform it so as to reflect his intent that the transfers be gifts with the understanding that each of his sons pay such gift tax as might be imposed on the stock transfer to him. All the transactions involved took place

in the same tax year, 1964. The first stock transfers took place in two transactions in the latter part of April, 1964. The reformation of the transactions occurred in September of that year.

The government contends that the actual intent of Mr. and Mrs. Davis at the time of the stock transfers in April, 1964 was to sell the stock to their three sons; and that nothing they did in regard to the stock during the remainder of 1964 was effective for tax purposes.

When the 1964 income tax return of Mr. and Mrs. Davis was audited in 1966, the Internal Revenue Service decided that the transfers of the Cummins stock were sales, and made an assessment for an income tax deficiency accordingly. The amount assessed was paid under protest. All preliminary steps necessary for the maintenance of a suit for refund have been met, and the case is now properly in this Court.

In August, 1964, Mr. and Mrs. Davis also transferred to each of their sons 65,886 shares of stock in Mid-Continent Supply Co., another company in the Ken Davis Industrial International, Inc., complex. There was also an agreement in connection with that transaction that the donees would pay the amount of such federal gift taxes as might be imposed on the transfer.

Gift taxes in the total amount of $1,381,318.22 were duly paid by the donors in 1965 on the transfers of the Cummins and the Mid-Continent stocks; and the donees, in accordance with their agreement, re-imbursed their parents for such amount in the same year. The government still has the money paid as gift taxes.

As a result of the re-imbursements for the gift taxes made by the sons to their parents in 1965, the government claimed that such amounts were taxable income to the parents in that

---

1. At the time of the transactions here involved, Kenneth W. Davis, Jr., was the only one of the three sons who had reached his majority. A separate trust had been set up for each of the other two boys; and the gifts for those boys were made by transfers of the stock to their respective trusts.

year, and made deficiency assessments accordingly. The dispute over that matter, was decided against the government on December 20, 1971. Estate of Kenneth W. Davis, et al v. Commissioner, 30 T.C.M. 1363, affirmed, 5 Cir., 469 F.2d 694 (1972). The plaintiffs claim here that the decision of the Tax Court is dispositive by res judicata, collateral estoppel by judgment, or otherwise of the issue in this case as to whether the transfers of the Cummins stock were gifts. The opinion of the Tax Court does not indicate that that issue was litigated there. The government did contend that the agreement by the donees to pay the gift taxes made the transactions involving the stock in each of the two corporations part gift and part sale. The argument was that the parents realized a capital gain on the transfers measured by the difference between the sales price for enough stock to pay the gift tax obligation and their basis therein. This Court is of the opinion that the issues in the case before the Tax Court were entirely different from the ones here, and that the decision of the Tax Court is not dispositive of any issues now before the Court in this case.

Each side made a motion for instructed verdict at the conclusion of all the evidence. The Court was of the opinion that the plaintiffs were entitled to judgment as a matter of law on the ground that regardless of the intent of the taxpayers at the time of the transfers of the Cummins stock in April, 1964, they could subsequently, in the same tax year, with the consent of the transferees, and in the absence of fraud, change the transaction to a gift and pay gift tax rather than income tax thereon. Buff v. Commissioner, 58 T.C. 224 (1972),[2] and cases cited therein. However, the Court felt that there was a fact issue in regard to the plaintiffs' theory that Mr. Davis actually intended to make a gift of the Cummins stock to his sons at the time of the transfers to them in April, 1964, and that he had a right within the same tax year, to reform the transfer to carry out that intent, and to be liable only for gift tax on the transaction. In accord with the recommended practice of submitting all *possible* fact issues to the jury in the form of special interrogatories and acting upon motions for judgment as a matter of law after return of the verdict,[3] the Court submitted the following question to the jury:

"Do you find from a preponderance of the evidence that Kenneth W. Davis in-

2. The following is quoted from the opinion in the Buff case:

"In the case now before us, the petitioner went further than the taxpayer in the *Mais* case [51 T.C. 494 (1968)]. Not only did the petitioner freely admit to having taken the money, but the petitioner executed an affidavit of judgment and went out and borrowed funds to make partial restitution. Likewise, petitioner's employer accepted the petitioner's obligation and continued petitioner's employment. Thus, unless we are wholly to disregard the acts of the parties, we must assume that there was a consensual agreement between the petitioner and his employer to treat the transaction as giving rise to a 'debt' due from the petitioner. That agreement arose in the same year that the funds were embezzled. If we look to the transaction as to the close of the taxable year, we find that the petitioner had formally relinquished any claim of right. His status was no different than if he had borrowed the money. This case thus becomes indistinguishable from United States v. Merrill [211 F.2d 297 (C.A. 9, 1954)], supra, and from *J. W. Gaddy* [38 T.C. 943 (1962)], supra."

3. Malone and Hogan Hospital Foundation v. Boston Ins. Co., 5 Cir., 378 F.2d 362 (1967); Fleniken v. Great American Ind. Co., 5 Cir., 142 F. 2d 938 (1944), cert. den. 323 U.S. 774, 65 S.Ct. 134, 89 L.Ed. 619; Shaw v. Hines Lumber Co., 7 Cir., 249 F.2d 434, 436 (1957); Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743 (1943). The following is quoted from the opinion in the Malone and Hogan Hospital Foundation case:

"Boston moved for an instructed verdict at the conclusion of the evidence. The Court was of the opinion that Boston was entitled to judgment as a matter of law but followed the recommenced practice of submitting possible fact issues to the jury so that remand for a new trial might be obviated if on appeal this court found him in error."

tended to make a gift to his sons of the Cummins stock at the time of the transfer of such stock to them in April, 1964?"

The jury's answer was: "He did intend to make a gift of such stock."

There was no other possible fact issue to submit to the jury.

 The Court is of the opinion that the plaintiffs are entitled to judgment (1) as a matter of law on the theory above discussed in connection with the motion for instructed verdict, and also (2) on the verdict of the jury considered along with the facts established as a matter of law by stipulation or otherwise. The following cases support the principle that a taxpayer, who by mistake consummates a transaction in a manner that is not in accord with his actual intent, may in the same tax year, with the consent of the other parties, reform the transaction so as to carry out his real intent, and that such reformation will determine the federal tax consequences. United States v. Merrill, 9 Cir., 211 F.2d 297, 304 (1954) [4]; Curran v. Commissioner, 15 T.C. 341, 343 (1950).

The cases relied upon by the government in support of its claim that the reformation in September, 1964, was ineffective for tax purposes are distinguishable on the ground that none of them involved a situation where, as here, the reformation was made in the same taxable year as the original transaction

to correct a mistake contrary to the taxpayer's intent.

Judgment will be entered for the plaintiffs in accordance herewith.

Signed, February 26, 1974.

---

4. The following quotation is taken from the Merrill case:

"That ['claim of right'] rule is founded upon the proposition that, when funds are received by a taxpayer under claim of right, he must be held taxable thereon, for the Treasury cannot be compelled to determine whether the claim is without legal warrant, and repayment of the funds in a later year cannot, consistently with the *annual accounting concept*, justify a refund of the taxes paid. . . . We are not aware that the rule has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them. Cf. Carey Van Fleet, 2 B.T.A. 825; . . . We think there is no warrant for extending the harsh claim of right doctrine to such a situation. In such case the Internal Revenue Bureau is not faced with the problem of deciding the merits of the claim to the funds received, for the question has been resolved by the interested parties."