EDNA BENNETT HIRST, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2865-72.     Filed December 9, 1974.

*Michael Mulroney* and *John P. Lipscomb,* for the petitioner.
*Robert E. Dallman,* for the respondent.

OPINION

RAUM, *Judge:* Whether a donor realizes taxable income upon payment of the resulting gift taxes by the donee or out of the transferred assets is a matter that has been the subject of a tortuous course of decision, characterized by subtleties and fine distinctions. If we accept the decisions in this field, it is our judgment that petitioner did not realize any taxable income as a consequence of the payment of the gift taxes by her son and daughter-in-law.

At the outset, there can be no reasonable dispute that liability for the gift tax is placed by statute primarily upon the donor, section 2502(d) of the 1954 Code, and that payment of the tax by the donee must be regarded as discharging that liability of the donor. Moreover, the discharge of a solvent taxpayer's liability is ordinarily regarded as conferring a benefit upon him which may furnish the basis for taking it into account in the computation of taxable income. Cf. *Douglas v. Willcuts,* 296 U.S. 1. Bearing these considerations in mind we proceed to consider the development of the case law in this area.

Our earliest concern with this general problem appears in cases involving gifts to trusts. Typically, these cases dealt with arrangements whereby trust income was used to pay the gift tax, and it was held that such trust income that was required to be used for that purpose or was available for such use was taxable to the donor as ordinary income. Where the income was distributable directly to the donor to enable him to pay the gift tax, the result appears to have been based on the theory that he had "reserved" such income from the gift or that he had made himself a "preferred beneficiary" of the trust. That, in substance, was the holding of *Estate of A. E. Staley, Sr.,* 47 B.T.A. 260 (1942), affirmed 136 F. 2d 368 (C.A. 5), certiorari denied 320 U.S. 786, which also rejected the taxpayer's contention that the transfers

there involved were part-gift and part-sale, thereby precluding the treatment of the amount paid to the donor as a nontaxable return of capital.

*Staley* was followed by a series of cases beginning with *Estate of Craig.R. Sheaffer,* 37 T.C. 99, affirmed 313 F. 2d 738 (C.A. 8), certiorari denied 375 U.S. 818, in which the trustees paid the gift tax out of income of the transferred assets, and the donor was held chargeable therewith under section 677 of the Code as income for the benefit of the grantor.[2] The Court emphasized the fact that the primary liability for the gift tax was that of the donor and that the trustee was "clearly satisfying * * * [that] liability," 37 T.C. at 105.

However, the matter of the use of trust income to pay the gift tax did not end with *Staley* and *Sheaffer.* In *Estate of Annette S. Morgan,* 37 T.C. 981, affirmed 316 F. 2d 238 (C.A. 6), certiorari denied 375 U.S. 825, the trustees borrowed the money for the gift tax and repaid the loan out of trust income of subsequent years. The Court held that since the donor's gift tax liability had already been discharged in the year the loan was taken out, the repayment of the loan in later years did not confer any benefit upon the donor, with the consequence that section 677 was inapplicable and the donor realized no taxable income of any kind in such later years. Apparently, no effort was made to charge the donor with income on some other theory in the earlier year when the gift tax liability was discharged.

*Morgan* thereupon gave rise to new refinements. It seems that in *Sheaffer,* the gift tax was paid in part with current trust income that was held taxable to the donor, as indicated above, and in part with borrowed funds. Thereafter, there was an entirely new proceeding in *Sheaffer,* dealing not only with the repayment of the loan out of trust income of a later year, but also the trustees' payment of a deficiency in gift tax out of trust income of a still later year. Following *Morgan,* it was held that the repayment of the loan out of trust income did not give rise to the realization of taxable income under section 677, but that the use of current income to pay the gift tax deficiency was taxable to the donor in accord with the first *Sheaffer* case. *Estate of Craig R. Sheaffer,* 25 T.C.M. 646.

---

[2] Of course, where the gift tax is paid at the discretion of the trustee, the trust income thus used is chargeable to the grantor pursuant to sec. 677 only where the exercise of such discretion is not conditioned upon approval by an "adverse" party.

Such was the state of the law in this field when this Court decided *Richard H. Turner,* 49 T.C. 356, affirmed 410 F. 2d 752 (C.A. 6), a case of critical significance in the present litigation. In *Turner* the donor made nine separate gifts of low basis securities, three to named individuals outright, and six to trusts for the benefit of certain persons. Each transfer was on condition that the recipient pay the resulting gift tax liability. The three individual donees contributed their respective shares of the gift taxes either from available cash or the sale of some of the donated securities. The six trust donees contributed their respective shares primarily from the sale of some of the donated securities, supplemented in two cases by loans, and in four of them by a comparatively small amount of current income. Except possibly for these small amounts of current income, there was apparently no basis for invoking section 677. The Commissioner instead argued that each transfer was part-gift and part-sale and that the excess of the gift tax paid by each donee over the basis of the securities transferred to such donee constituted capital gain chargeable to the donor. However, on brief, he conceded (for reasons that are not entirely clear) that the transfers in trust were not sales. Thus, the principal issue dealt with by the Court was whether the gifts to the three individuals could be classified as part-sales, resulting in the realization of capital gain—an issue identical with the one before us in the present case.[3]

In deciding against the Government, the Court reviewed the earlier cases and concluded that their "rationales * * * are totally inconsistent with a finding that the transfer was a part sale, part gift." 49 T.C. at 362. To the contrary, the Court regarded the transaction as a "net gift" in the amount of the value of the shares less the gift tax—a transaction having no income tax consequences to the donor. 49 T.C. at 363. The decision was affirmed by the Sixth Circuit in a per curiam opinion. 410 F. 2d 752.

We cannot see any meaningful differences between the present case and *Turner,* and unless later decisions require us to reach a different result here we think we must follow it.

In *Victor W. Krause,* 56 T.C. 1242, the donor had made gifts to three trusts for the benefit of his grandchildren in 1963, the

---

[3] To be sure, only petitioner's son and daughter-in-law agreed to and did in fact pay the gift taxes in question, but such payment covered the gift taxes applicable to all the gifts made by petitioner, and no issue has been presented to us that would make anything turn upon this fact.

trustees agreeing to pay the gift taxes. The trustees were given discretion to use trust income, borrowed funds, or the proceeds of sale of portions of the corpora. On April 14, 1964, the trustees paid the gift taxes with the proceeds of a loan. The Court held that since trust income could have been used for that purpose, the donor was chargeable with taxable income under section 677 to the extent of the comparatively small amount of trust income realized in 1964 up to April 14 of that year, but, relying upon the theory of the *Morgan* case, was not accountable for anything more. Of significance here, however, is its reliance upon *Turner* in rejecting the Commissioner's alternative contention that "petitioner's transfer in trust was part gift and part sale, and that he realized capital gain, measured by the difference between the sales price for enough stock to pay the gift tax obligation and his basis therein." 56 T.C. at 1248. It stated specifically that it "adhere[d] to the authority" of *Turner*.

In *Estate of Kenneth W. Davis,* 30 T.C.M. 1363, affirmed per curiam 469 F. 2d 694 (C.A. 5), the Court again refused to treat as part-gift, part-sale, a transfer of securities to a son of the donors, where, pursuant to the applicable instrument, as modified, the transfer was subject to the donee's agreement to pay all gift taxes. The Court relied upon *Turner* and *Krause,* stating that it "will continue to adhere to the authority of those cases." [4] 30 T.C.M. at 1368.

Up to this "point in time," there can be no serious question that *Turner, Krause,* and *Davis* require us to decide this case in petitioner's favor. One more case, however, remains to be considered, and that one is *Joseph W. Johnson, Jr.,* 59 T.C. 791, affirmed 495 F. 2d 1079 (C.A. 6), certiorari denied 419 U.S. 1040, where a taxpayer owned securities having a fair market value of over $500,000 and a basis of only $10,812.50.[5] He borrowed $200,000 from a bank on a 30-day note "without personal liability," using the securities as collateral, and then transferred his ownership in the pledged securities to a trust for his children. The trustees replaced the donor's note with their own note, also secured by the same collateral. The donor used the

---

[4] In dealing with the transfers to the trusts (which did not receive any income from the donated securities during the taxable year up to the time that they paid the gift taxes), the Court distinguished *Staley* and *Sheaffer,* and relied upon *Turner* in concluding that there was involved merely a "net gift."

[5] The case also involved two other taxpayers who had similar securities and who entered into transactions like the one described above.

"borrowed" $200,000 for his own purposes. The total amount of gift taxes paid with respect to the transfer was somewhat under $150,000. The Court held that the transaction was in substance part-gift and part-sale and that the taxpayer realized a capital gain equal to the difference between the $200,000 "loan" proceeds and the basis of the securities involved. In distinguishing *Turner,* the Court stated (pp. 812-813):

> The instant case is distinguishable from the *Turner* case both on the facts and the issues presented. The transfers in the present case were not conditioned on the payment of the gift tax liabilities by the recipients and no issue involving the payment of gift taxes is presented herein. Nor was there any reservation or retention by the donors in the present case, of any right or interest in the corpus or income of the trusts such as was found by the Court in the *Turner* case. Nor, in our opinion, are the loans in the present case to be equated with the gift tax liabilities in the *Turner* case. * * *

Certainly, our opinion in *Johnson* does not require a different result from that reached in *Turner.* However, as a consequence of the opinion of the Sixth Circuit, affirming our decision in *Johnson,* [6] the Commissioner asks us to hold, contrary to *Turner,* that petitioner's transactions constituted part-gifts, part-sales, and that she realized taxable capital gain measured by the difference between the amount of the gift taxes and her basis in the donated assets.

There can be no doubt upon reading the Circuit Court's opinion, that it did not approve of *Turner,* and that it was critical of the "maze of cases" in this field. Nevertheless, it must be remembered that it was the Sixth Circuit itself which affirmed this Court's decision in *Turner,* and that it did not, in *Johnson,* overrule it. To be sure, the Sixth Circuit concluded that *Turner* did not support the taxpayer's position in *Johnson*—a conclusion with which we agree. And it stated finally that (p. 1086): "*Turner* has no precedential value beyond its peculiar fact situation, in view of the Commissioner's concessions in that case both in the Tax Court and on appeal to this Court." But the Court of Appeals was mistaken in its assumption that the Commissioner's concessions in *Turner* deprived it of any precedential value beyond its own facts. For *Turner* involved gifts both to individuals and to trusts, and the Government's concession was limited only to the transfers in trust. 49 T.C. at 362. No such

---

[6] In the Court of Appeals, the taxpayer limited his position by objecting only to being taxed on the difference between the gift taxes and his basis in the securities. 495 F. 2d at 1081.

concession was made as to the three gifts to individuals in that case, and it cannot be distinguished here on that ground. It remains, at least as to the gifts to individuals, as a decision of this Court, affirmed by the Sixth Circuit.

We recognize that there is much force to the Government's position. The gift tax itself is imposed only upon the "net gift," i.e., upon the gross amount of the property transferred minus the gift tax paid by the donee. In substance, a portion of the transferred property equal in value to the amount of the gift tax is not treated as having been part of the gift. But surely that portion did not vanish into thin air, and a strong argument can be advanced for the conclusion that it was exchanged for the donee's payment of the gift tax on the "net gift," a transaction that may result in the realization of gain or loss depending upon the donor's basis in the property. If the donor had sold that portion to an outsider immediately prior to the gift of the remainder, and then used the proceeds of the sale to pay the gift tax, the practical consequences to the donor would have been the same as in *Turner,* except that the donor would have been taxable on any gain realized on the sale. However, in the absence of any clear-cut overruling of prior law by a Court of Appeals, we are not prepared at this time to reexamine an intricate and consistent pattern of decision that has evolved over the years in this field, notwithstanding that there may be much to be said in favor of a more "realistic" approach to the problem. Things have gone too far by now to wipe the slate clean and start all over again.

In view of the result reached by us, we do not consider other contentions made by the petitioner to the effect that the gift taxes paid by petitioner's son and daughter-in-law should themselves be regarded as a gift by them to the petitioner, and that in any event any taxable gain realized by petitioner may not be charged to her in the year 1968.

*Decision will be entered for the petitioner.*